KEPPLE ET AL v. THE CITY OF KEOKUK.

1. **Cities and Towns:** LIABILITY FOR CHANGE OF GRADE OF STREETS. At common law cities and towns were not liable to lot-owners for damages occasioned by a change of the grade of a street; and under the statute of this state, (Code, § 469; Sec. 8, Chap. 116, Acts of Sixteenth General Assembly,) lot-owners can recover for such damages only when they have improved their lots with reference to a *previously established* grade, by the subsequent change of which the damages arise. But the previous establishment of a grade is not to be proved by the fact that the city has extensively and permanently improved the street, but only by evidence that the city, by ordinance, or other proper legislative action, has established a grade for the street in question.

*Appeal from Lee Circuit Court.*

WEDNESDAY, OCTOBER 17.

THIS is an action to recover damages for the alleged wrongful change of the grade of a street in front of certain lots and buildings owned by the plaintiffs. There was a trial by jury,

which resulted in a verdict and judgment for the defendant, and plaintiffs appeal.

*Craig, Collier & Craig,* for appellants.

*J. H. Dryden & Hagerman, McCrary & Hagerman,* for appellee.

ROTHROCK, J.—It appears from the evidence that the plaintiffs are the owners of three lots in Reid's addition to Keokuk. These lots front on Fifth street, and are about one hundred and twenty feet west of the intersection of Fifth and Cedar streets.   Immediately west of plaintiff's lots there is a stream called " Bloody Run," which crosses Fifth street at a right angle.   In 1873, the grantors of the plaintiffs erected buildings upon said lots, with reference to the level or surface of Fifth street at that time.   Before the buildings were erected, the city council had by ordinance established the grade of Fifth street at the intersection of Cedar street.   This ordinance established the grades of streets in the main part of the city in the usual manner, by the establishment of a datum line, or plane of reference, and by measurements therefrom; but no grade was established by this ordinance at any point in Fifth street west of Cedar street.   Before the buildings were erected on the plaintiffs' lots, the city had built a substantial bridge, with stone abutments, over "Bloody Run," and had quarried stone in the street, west of plaintiffs' lots, and used the same in filling up and macadamizing the street in front of and near plaintiffs' lots.   In 1880, the city council, by an ordinance, changed the grade at the intersection of Fifth and Cedar streets, by raising the same five feet, and established a grade west on said street past the property of the plaintiffs, by which the surface of the street was raised from four to five feet.   The object in raising the grade, and establishing a grade where none had been before established, was to so raise the bridge over " Bloody Run" so as to allow the laying of a railroad track, and the running of trains thereon,

under the bridge. The street was filled up, and the bridge was raised to correspond with the grade thus established; and in filling up and raising the level of the street in front of plaintiffs' lots they have been damaged.

It was conceded that, at the time plaintiffs' grantors erected buildings on the lots, the records of the city council did not show that any grade had been established on Fifth street further west than the intersection of Cedar street. But the plaintiffs contend that it was not necessary to show that the city council·had established a grade of the street by ordinance or resolution, and afterwards changed the same, to the damage and injury of the plaintiffs, and they contended that the fact that the city had improved the street by excavating, filling and macadamizing it, and bridging the stream, was proper to be submitted to the jury, as showing an established and permanent grade by which the city was bound, and with reference to which lot owners had the right to improve their lots, and be protected in so doing. On the other hand, the defendant contended that the establishment of a grade could only be shown by some action of the city council, by ordinance or resolution. The circuit court adopted this latter view of the rights of the parties, and, as we think the question thus presented determines all that is necessary to be determined in the case, no other question need be considered.

In the case of *Creal v. The City of Keokuk*, 4 G. Greene, 47, it was·held that a city was not liable to a lot owner for the change of a grade of a street, and that the plaintiff in that case could not recover damages resulting from such change. That such was the rule at common law is conceded by counsel for appellants. It appears from the opinion in Creal's case that, at that time, this was the rule as established in this country and in England, with the exception that, in the state of Ohio, the contrary was held to be the law. After the decision in Creal's case, the General Assembly of this state amended the charter of the city of Keokuk, by passing an act providing for the payment of damages occasioned by

changes in the grades of streets—Chap. 17, Sec. 17, Laws of 1856, p. 42; and by Sec. 8 of Chap. 116 of the Acts of the Sixteenth General Assembly, it was provided that: "When any grade of any street or alley shall have been established, and any person shall have built or made improvements on such streets or alleys according to the established grade thereof, and such city shall alter said established grade in such a man-ner as to injure or diminish the value of said property, said city shall pay to the owner or owners of said property so in-jured the amount of such damage or injury."

By the charter of the city, it is provided that the city coun-cil shall have exclusive power to establish and regulate the grades of streets within the corporate limits. Sec. 22 of act of the legislature, approved December 13, 1848.

It is well understood that the manner in which the grades of streets are established is by ordinance. Establishing a grade does not mean the actual lowering or raising the sur-face of the streets. It means the fixing of a base line or plane of reference, and certain measurements from that plane. Where that has been done by ordinance, and the measure-ments made, the owners of property, by an examination of the records of the council, may readily determine the estab-lished grade in the streets adjacent to their property. They can ascertain by such an examination where the surface of the street will be when brought to the established grade. The rule contended for by appellant, that the surface of a street which has been extensively and permanently improved is the line of an established grade, would involve the city and property owners in very great uncertainty as to their rights. Where a city or town has made no established grade of its streets of record, but has worked and improved the streets, the question would arise, in every change of the surface of the streets by excavation or embankment, whether adjoining property own-ers are entitled to damages. We think the establishment of a grade means the passing of an ordinance, or other legislative action of the council of the city, prescribing and fixing grade

lines to which the surface shall be brought when the streets shall be improved, and that, if a property owner erects buildings, or otherwise improves his lots, before such action is taken by the city council, he cannot recover for any changes in the surface of a street made after such improvement pursuant to grade lines established by the council, provided such changes in the surface be not negligently done, to the damage of the lot owners.

A large number of authorities have been cited by counsel for the respective parties in this case. We have carefully examined all of them, and, without citing and reviewing them, we may say that they afford very little aid in determining the question under consideration. It is true that in the *City of Akron v. Chamberlain & Co.*, 34 O. St., 328, it is held that a grade of a street may be established by permanently improving the street, without the passage of an ordinance or other legislative action. In that state, as we have seen, a city is liable, independent of any statute, for any damages to lot owners arising from a change of the grade of streets.

In this state there is no liability, except such as is created by statute, and in our opinion the language of our statute that, "when the grade of any street or alley shall have been established," means when it shall be established in the manner in which grade lines are usually fixed by survey, ordinance and record. It seems to us that this requirement is not fulfilled by merely working the streets, or otherwise improving them for travel; it means such an act of the city council as that property owners, by examining the records, may determine where the established grade lines are, and govern themselves accordingly.

AFFIRMED.