## LIEBOLE ET AL. *v.* TRASTER.

[No. 6,109.   Filed February 20, 1908.]

1. MUNICIPAL CORPORATIONS.—*Towns.—Sewers.—Condemnation of Private Property for.*—Under §4443p Burns 1901, Acts 1901, p. 401, §16, towns have the legal right to condemn private property for an outlet for a public sewer. p. 282.

2. SAME.—*Towns.—Sewers.—Void Proceedings.*—Where the town engineer's report of a proposed sewer failed accurately to describe the beginning, route, terminus, fall, outlet, size or cost thereof, or the boundary of the drainage district, description of lands which would be damaged, the names of the owners, or the damage caused thereby, such requirements being jurisdictional, the proceedings taken thereon for the construction of such proposed sewer are void. p. 283.

3. SAME.—*Sewers.—Outlets.—Notice.*—A notice of the construction of a proposed sewer, stating that the outlet of such sewer was to be "at the lot line" of the plaintiff's property, is notice that the sewer will not enter her lot. p. 286.

4. SAME.—*Towns.—Sewers.—Engineer's Report.*—The town engineer's report of a proposed sewer, as finally adopted, should set out the boundaries of the drainage district, the size and kind of sewer, the outlet and probable cost thereof, and specific details of the work. p. 286.

5. APPEAL.—*Briefs.—Evidence.*—Where it is contended that the decision is unsupported by the evidence, the appellant must set out the evidence or substance thereof in his brief. p. 287.

6. SAME.—*Weighing Evidence.*—The Appellate Court will not weigh conflicting evidence. p. 288.

From Kosciusko Circuit Court; *Levi R. Stookey,* Special Judge.

Suit by Ellen Traster against Frank W. Liebole and another. From a decree for plaintiff, defendants appeal. *Affirmed.*

*Deahl & Deahl* and *A. L. Cornelius,* for appellants.

*Bertram Shane* and *North & Wagner,* for appellee.

HADLEY, P. J.—This is a suit brought by appellee against appellants. The complaint is in two paragraphs. The first seeks to enjoin appellants. from constructing a sewer through appellee's land. A restraining order was issued thereon by the court, and appellants constructed the sewer in defiance of the court's order. Appellee then filed a second paragraph, seeking to enjoin appellants from using the sewer and permitting water and sewage to run through the same over appellee's land. The grounds of complaint in each paragraph are (1) that the construction of the sewer was illegal, in that the board of town trustees had not taken the preliminary steps as prescribed by law; (2) that the sewer, as constructed, was a nuisance, destroying the comfort and endangering the health of the tenants on appellee's land and persons in the vicinity, and depreciating the value of appellee's property. A trial was had, and on request special findings and conclusions of law made, upon which a decree was entered for appellee.

Numerous errors are assigned, but, in our opinion, the cause should be determined upon the question whether the board of town trustees, in its preliminary proceedings, omitted such necessary steps as to render the whole proceedings illegal and void. This question is presented upon the pleadings, the special findings, conclusions of law and the evidence. It is unnecessary to take them up in detail, as presented. The sewer complained of was attempted to be constructed under the act of 1901 (Acts 1901, p. 401, §4443a *et seq.* Burns 1901). The record shows conclusively that on July 21, 1903, upon petition, the board of trustees, by unanimous vote, passed a resolution for the construction of main drain sewers in the middle of Main and Pearl streets, beginning at Harrison street and emptying in Turkey creek, and appointed Henry Cook, as civil engineer, to make survey and report the same to the board; that said Cook accepted said employment, made a survey, and filed with the board a plat and profile showing the lines of said sewers;

that the plats and profiles showed by lines that said sewers began in the middle of Harrison street and apparently extended along said Pearl and Main streets to Turkey creek; that said engineer also filed with the board a blank form of contract to be signed by the contractor, which contained certain specifications for the construction of the sewers, including the kind and character of materials to be used in the same. This is all that the report contained. Upon the filing of this report, said board caused the following notice to be published in a weekly newspaper of the town, on August 13:

"To whom it may concern.

Notice is hereby given that the board of trustees of the incorporated town of Syracuse, Kosciusko county, Indiana, has declared its desire to construct a sewer beginning at the center of Harrison street, running thence in the middle of Main street, and terminating in Turkey creek ditch, at a point where said ditch crosses the lot line on the north side of Main street; also a sewer beginning at the middle of Harrison street, running thence in the middle of Pearl street. A competent engineer has been appointed to survey the same, and has filed his report as required by law, and the board has fixed September 14, 1903, at 7 o'clock p. m., for the hearing of said report and the final determination of said board thereon."

No one appeared in response to said notice at the time fixed. Said board then, by resolution, declared that said sewers would be of public utility, and ordered advertisements for bids. The board did not determine what part of the cost should be paid out of the general fund of the town. The bids were received and contract let to appellant Liebole, and he proceeded to the construction thereof. The sewers were completed and accepted by the board, and assessments of benefits and damages made. Appellee's lot was assessed for benefits in the sum of $5, and damages to said lot were assessed at $25. Appellee protested, and resisted, both in person and in the courts, the efforts of the board and con-

tractor in establishing and constructing the Main street sewer. But the same was constructed over her protest and in defiance of the court's restraining order. The record also shows that appellee had no actual notice of the proceedings and construction of the sewer until the same reached her property, and she immediately began to resist the work.

The act governing this proceeding (Acts 1901, p. 401, §4443a *et seq.* Burns 1901) authorizes incorporated towns to construct sewers for sanitary or drainage purposes, and to charge the expense thereof to the properties benefited thereby. Section two (§4443b, *supra*) provides that when a town desires to construct such sewers the board of trustees shall by resolution declare its desire so to do at a regular meeting of such board, which resolution shall give a general description of the work, with the route and termini thereof, and shall appoint a competent civil engineer to survey the same. These provisions were substantially complied with in the case at bar. Section three (§4443c, *supra*) is as follows: "The said engineer shall make a careful survey of the proposed sewer, and report in writing to the board of trustees of such town, the following facts: First. An accurate description of the beginning, route, terminus and fall of the proposed sewer or sewers, including the outlet of the same. Second. Detailed specifications, plans and profile for the proposed sewer. Third. The kind of material to be used and the size of the sewer proposed. Fourth. An estimate of the cost of the construction of the same. Fifth. A description of the district which will be benefited by the construction of the proposed sewer, so specifically that all property owners to be affected thereby may be informed whether or not any property owned by them will be affected by the proposed improvement. Sixth. A description of any lands which will probably be damaged by the proposed improvement, name of the owner of such lands, together with the probable amount of the damage." Section four (§4443d, *supra*) provides that, upon the filing of this report, notice

shall be published, setting forth the substance of the resolution, the beginning, route and terminus of the sewer; that an engineer had been appointed and he had filed his report as required by law, and that the board had fixed a certain day for the hearing and final determination thereof, which notice shall be published thirty days before the day set for such hearing. Section five (§4443e, *supra*) provides that, at the time fixed for said hearing, any person interested may appear before said board and be heard, and may introduce evidence upon any question involved, and may be heard in person or by counsel. Upon the completion of said hearing the board shall determine the public utility of said drain, adopt, reject, alter or amend such report, or refer the same back to the engineer for amendment, alteration or reconsideration. Any affirmative action shall be by a two-thirds vote. At the same time the board shall determine what part, if any, of the cost of such sewer shall be paid out of the general fund of the town. Sections six, seven, eight and nine (§§4443f-4443i, *supra*) provide for the letting of the contract, the bond of the contractor, the appointment of supervising engineer, and the inspection and acceptance of the work upon completion. Sections ten and eleven (§§4443j, 4443k, *supra*) provide for the assessments to pay for said work, and it is expressly provided that no property shall be assessed in excess of the benefits received. Other sections provide for the assessments and collection thereof, the issuance of bonds, and the authority to compel the construction of certain sewers upon petition.

Section sixteen (§4443p, *supra*) provides that such sewers, when practicable, shall be constructed along streets and highways; but, when necessary, may be constructed through private property, and damages occasioned thereby assessed and paid as provided in said act. Also all property benefited may be assessed whether abutting upon the sewer or not; but such assessments are limited to benefits received as an outlet for drainage or sew-

age. Under the provisions of the latter section it is clear that appellant had authority, if it was necessary, to construct said sewer through the lands of appellee, if its proceedings were legal and the manner of construction did not constitute a nuisance.

As we have heretofore shown, the board of trustees almost wholly failed to comply with the requirements of section three: (1) The report of the engineer did not show an accurate description of the beginning, route, terminus, fall and outlet of the proposed sewer. These facts, except the latter, may perhaps be inferred, by one skilled in such matters, from certain technical marks and scale measurements, but they are not stated so that the ordinary property owner may know and understand; (2) it did not show the size of the proposed sewer; (3) it did not give an estimate of the cost of construction; (4) it did not give the boundaries of the drainage district so that persons owning property therein would know that their property would be affected thereby; (5) it did not give a description of any lands that would probably be damaged, the name of the owner and the amount of the probable damage. If the provisions of the statute that were thus ignored are jurisdictional, then the subsequent action of the town board is void. If, however, such provisions were only designed to secure method in procedure, their nonobservance is only an irregularity, and does not render the subsequent proceedings void *(Edwards* v. *Cooper* [1907], 168 Ind. 54; *Wilson* v. *Simmons* [1896], 89 Me. 242, 36 Atl. 380) ; the difference being between void action and imperfect action, the one applies to matters contrary to law and the other to matters which are contrary to the practice of the law. *Cobbossee Nat. Bank* v. *Rich* (1889), 81 Me. 164, 16 Atl. 506; *Edwards* v. *Cooper, supra.* In the latter case the court amplifies the rule as follows: "Now, it is obvious that in the taking of those steps which cannot be said to involve an exercise of the power to decide, the effect

of the omission to observe a provision of statute depends upon whether the particular provision has to do with orderly methods in the transaction of the business, or whether it was placed in the statute as a check upon the power of the tribunal. It is the latter class of provisions which the cases term 'jurisdictional.' When we consider the language of the statute and the nature of the omission which is here involved, there can be no question that we have before us a case in which there has been a neglect to observe what is jurisdictional. Under the act before us the lawmaking power, instead of exerting its own authority to provide by law for the improvement and the creation of the taxing district, has granted to the board these elements of governmental power, but the grant of authority has been hedged about by provisions which relate to matters of fundamental right, and the very authority has attached to it what is in form a condition precedent. The whole idea of local assessments goes upon the theory of commensurate benefits received, either actual or conclusively presumed from the exercise of the authority. *French* v. *Barber Asphalt Pav. Co.* [1901], 181 U. S. 324, 21 Sup. Ct. 625, 45 L. Ed. 879; *Fallbrook Irrigation District* v. *Bradley* [1896], 164 U. S. 112, 17 Sup. Ct. 56, 41 L. Ed. 369; *Paulsen* v. *Portland* [1893], 149 U. S. 30, 13 Sup. Ct. 750, 37 L. Ed. 637; 2 Cooley, Taxation (3d ed.), 1153. To proceed upon any other theory would be to countenance the view that the taking may be lawful, although the assessment is but a disguised form of confiscation. It does not therefore admit of question that the provisions of the statute concerning the entering of findings as to the bounding of the district, and as to the benefits being equal to the estimated cost, are in the clearest degree mandatory. They, in many instances, constitute the only check which the taxpayer has against the exercise of arbitrary and oppressive power in those particulars. When a record is presented in which it appears that the board has utterly failed to observe these fundamental

requirements, it must be affirmed that there is a want of power to fix an assessment."

In the case just quoted from, a sewer was sought to be constructed under an act of the General Assembly which provided that at the preliminary hearing the board should fix the boundaries of the drainage district, determine that the estimated cost would not exceed the estimated benefits, and these matters were to be ascertained from a report filed by the civil engineer and the evidence produced at the hearing by parties interested. This the board failed to do. The sewer was constructed, and on suit to foreclose an assessment lien to pay for the same the Supreme Court held that this failure was jurisdictional and subsequent action in that behalf was void, saying in the course of the opinion: "Since the lawmaking power has vested the authority to determine benefits and damages in the local authorities, and not in the courts, how can we know, or how could a court try the question, whether the supposed advantage was really a net gain to the property owners? Questions as to the capacity of the sewer, if connected with another sewerage system above, of water backing into basements in the drainage area in times of flood, and as to the obstruction of the sewer by silt flowing into it from the upper lands, are among the questions which obtrude themselves as matters which the courts are not authorized to try in this kind of a case, but which must necessarily be considered in determining whether the benefits to the district will equal the cost of construction." It is true, the statute now before us is somewhat different in its provisions, but in effect it is the same. The provisions of the statute involved clearly contemplate that the matters required to be reported by section three shall be considered in determining upon the public utility, and whether its cost would be less than the benefits, so as to be a net gain to the property owner, if not, whether the general public should be so benefited as to warrant an expenditure out of the general fund to make up the deficiency be-

tween the cost and the benefits to the property affected. These facts could only be properly determined by having before it the drainage area, the character, size, length and fall, kind of outlet, and cost of the sewer. Again, the people whose lands would probably be benefited or damaged were entitled to be heard and to introduce evidence. It was evidently contemplated by the legislature that the notice, by giving the route and termini of the sewer, and directing, to the report on file, all who might thereby expect their property to be affected would enable such persons readily to discover whether they should give the proceeding any further attention. In the case at bar the report, in fact, gave very little information not contained in the notice. It did not disclose the lands in the drainage district, or whose lands would probably be damaged or benefited, what each owner might be called upon to pay, whether the plan was a practical one, or any other fact to warrant a property owner to appear and contest the proceeding.

It also appears from the resolution and notice that the outlet of the sewer in question was to be in Turkey creek at the lot line of appellee. This clearly was notice to 3. her, at least, that the sewer would not enter her property. When the change of route was determined upon is not shown.

It was also contemplated by the act that, when the report of the engineer was finally adopted, the board would thereby adopt and fix the boundaries of the drainage 4. district, the size and kind of sewer, the outlet determined upon, the probable cost thereof, in fact the whole details of the work would thereby become definitely fixed. But in the case before us, by the adoption of the report, the size of the sewer was not prescribed, the exact ending and outlet not defined, the boundaries of the drainage area not fixed, lands that would probably be damaged not ascertained, the probable cost of the work unknown, whether the special benefits would equal the cost not deter-

mined, and whether the town would be compelled to or should pay any portion of the cost out of the general funds, and, if so, how much, undecided. We cannot believe the provisions of the statute with reference to these matters are mere matters of procedure. It seems clear that they were enacted as a check upon the power of the tribunal, at the very threshold of the proceedings, before any rights of third parties had intervened to complicate the situation, and are jurisdictional. This being true, the attempt to construct the sewer over appellee's land was an illegal act, and its continuance and its continued use constitute a trespass of such a character as to warrant injunctive relief.

The court found that the sewer was constructed over appellee's land in defiance of the court's order. Counsel for appellants question this finding, but fail to give a brief statement of the evidence, as required by the rules of court, or show wherein this is unsupported by any evidence. The burden is on appellants to show this. *Parkison* v. *Thompson* (1905), 164 Ind. 609; *Hudelson* v. *Hudelson* (1905), 164 Ind. 694; *Heath* v. *Sheetz* (1905), 164 Ind. 665. Counsel cite us to a page of the record wherein it appears that appellant Liebole was at work constructing the sewer on appellee's land. She demanded that he cease work, and, upon his refusal, she obtained the restraining order; but this evidence does not disclose that the work was completed before the order was served. This, however, is not material to the determination of the question, but the record does show that appellants were notified in ample time to protect themselves, and appellee denied the right of appellants to construct the sewer. Appellants insist that the finding that the sewer was constructed across appellee's land is not supported by the evidence. Appellants have not set out the substance of the evidence in their brief, as required by the rules of this court. The record of the evidence is voluminous, and we are therefore precluded from considering any question of the sufficiency

thereof. *Welch* v. *State, ex rel.* (1905), 164 Ind. 104; *Penn Mutual Life Ins. Co.* v. *Norcross* (1904), 163 Ind. 379; *Burck* v. *Davis* (1905), 35 Ind. App. 648.

    It does appear that there were both written and oral testimony on this point, and there is a ·conflict, and we would in no event weigh the same. *Parkison* v. *Thompson, supra; Hudelson* v. *Hudelson, supra; Ray* v. *Baker* (1905), 165 Ind. 74.

    We have not considered the other ground· asserted by appellee for relief, as, in our view of the case, it is unnecessary.

    Judgment affirmed.