## MENZIE v. CITY OF GREENSBURG ET AL.

[No. 6,756. Filed July 2, 1908. Rehearing denied December 18, 1908.]

1. PLEADING.—*Complaint.*—*Municipal Corporations.*—*Sewers.*—*Extras.*—Where two paragraphs of a complaint to enjoin a city from paying for a sewer improvement differed only in the fact that one alleged that the city was threatening to pay for certain extras, and the court sustained a demurrer to the second and overruled it as to the first, no harmful error was committed, since the payment of extras was not a jurisdictional fact. p. 666.

2. MUNICIPAL CORPORATIONS.—*Sewer Assessments.*—*Collateral Attack.*—A suit to enjoin a city from paying for a sewer improvement constitutes a collateral attack upon the proceeding for the construction of such sewer. p. 666.

3. SAME.—*Sewer Improvement Contracts.*—*Execution.*—*Jurisdiction.*—The manner of accepting bids and of letting a contract for the construction of a sewer improvement is of an administrative and not a jurisdictional nature; but the giving of notice for bids is jurisdictional. p. 667.

4. MUNICIPAL CORPORATIONS. — *Sewer Improvement Contracts.*— *Execution.*—Where the successful bidders for a street improvement signed the contract therefor and delivered same to the city and delivered therewith their bond to secure the performance thereof, which bond was not formally approved by the city council, and the improvement was made under the direction of the council, the irregularity was not a jurisdictional defect, and there being no fraud, an enforceable contract is shown. p. 667.

5. SAME.—*Sewer Contracts.—Assessments.—Acquiescence.—Injunction.*—A property owner who stands by and, without objection, permits a sewer contractor to construct a sewer system cannot be heard to complain of non-jurisdictional defects in the proceedings, when assessed to pay therefor. p. 669.

From Decatur Circuit Court; *Marshall Hacker,* Judge.

Suit by George Menzie against the City of Greensburg and others. From a judgment for defendants, plaintiff appeals. *Affirmed.*

*Goddard & Craig,* for appellant.

*Horace C. Skillman* and *Davison Wilson,* for appellees.

COMSTOCK, J.—Appellant brought this suit in the Decatur Circuit Court to enjoin the city of Greensburg from levying an assessment for a sanitary sewer improvement, the members of the common council from making, approving and confirming an assessment roll for said improvement, the city clerk from certifying the assessment roll to the city treasurer, and the city treasurer from collecting the assessment.

The amended complaint was in two paragraphs. A separate and several demurrer for want of facts filed by the defendants to each paragraph was overruled as to the first and sustained as to the second.

Said first paragraph alleges, in substance, that the plaintiff is, and had been for thirty years past, a citizen, voter, taxpayer and freeholder residing in the city of Greensburg, Indiana, and for the past ten years had owned and still owns certain real estate in said city, bordering and abutting along and upon Broadway, a street of said city; that defendants Elder, Hart, Vogel, Robison, Hornung and Miller are, and have been for some months last past, the duly qualified and

acting members of the common council of said city; that defendant Thompson has been for two years last past the qualified and acting mayor of said city, that defendant Epstein has been for twelve months last past the duly qualified and acting clerk of said city, and defendant Welsh is the duly qualified and acting treasurer of said city; that on May 10, 1905, at a special session of the common council of said city, a resolution was adopted whereby a general sanitary sewer improvement was found to be expedient and of public utility for said city and the inhabitants thereof; that said council, by said resolution, determined the district to be included in said proposed improvement; that the real estate of plaintiff herein borders upon and along said proposed improvement, and is contained within said district; that said council caused to be published a notice of the passage of said resolution, and on the same day it was passed and approved by the council it was examined and approved by the mayor of said city, and the plans, specifications, maps and profiles for said improvement, and the estimated cost thereof were adopted by said city; that thereafter, on June 1, 1905, at a special session of said council, it heard remonstrances of persons interested in said improvement, and on the same day said resolution was adopted the plans, specifications, maps and profiles for said sewer were readopted, the clerk was instructed to advertise for bids for the construction of the same, and June 27, 1905, was set for the opening of bids for its construction; that on said date, at a special session of said common council, bids were received for the construction of said sewer, said bids were tabulated, and said council awarded the contract for said sanitary sewer at $93,226.45 to Pulse & Porter; that said Pulse and the Porters are defendants herein; that said city did not on June 27, 1905, nor at any time thereafter, by motion, resolution, order or ordinance, direct or authorize its mayor, city clerk, or any other officer, committee or person to enter into and execute to the successful bidder a written contract; that on August

—, 1905, said Thompson, as mayor, and Bert Morgan signed an instrument in writing, without any authority from the common council of said city, long after the award as aforesaid; that said pretended contract was signed by Pulse & Porter; that on June 29, 1905, said Pulse & Porter, as principals, and the Federal Union Surety Company, as surety, signed a pretended bond for the faithful execution of said pretended contract, which said contract and bond are set out *in haec verba.*

Said agreement recites that it is made and entered into by and between the city of Greensburg, of the first part, and Will C. Pulse, Alexander Porter and William Porter, under the firm name and style of Pulse & Porter, party of the second part; that said second party contracts with said first party to construct, erect and complete for said city a sanitary sewer system, consisting of a sanitary disposal plant and all mains and branches, to furnish all material and perform all labor necessary to complete said system according to the specifications hereto attached and made a part of the contract, and in accordance with maps, plans and profiles now on file in the office of the city civil engineer and in the office of the city clerk, which maps, plans and profiles are made a part hereof by reference, and so taken as though they were attached hereto; that said second party shall also furnish all material, perform said labor, and complete said system in accordance with the resolution passed and approved by the common council of said city on May 10, 1905, and readopted on ——————— day of ———————————, 1905, in compliance with an act of the General Assembly of the State of Indiana, entitled, "an act concerning municipal corporations," approved March 6, 1905 (Acts 1905, p. 219, §3462 *et seq.* Burns 1905), and to the approval and acceptance by the common council of said city; that said first party agrees to pay said second party, for the faithful fulfilment of the conditions of the contract, the sum of $19,645 for the construction of

that part of said system known as the sewage disposal plant, and for the completion of the mains and branches according to the true intent thereof and as shown by said specifications, plans, maps, profiles and resolutions, made a part of the agreement and marked exhibit C; that should the first party require in writing any additional work or material in the construction of said system, other than is shown in said resolution, specifications, plans, maps and profiles, then said second party shall do and perform said additional work and labor, and furnish such additional material as may be directed, at the rate specified in said schedule of prices marked exhibit C; that if it be deemed advisable or necessary by said first party, in the proper construction of said sewerage system, to make changes in the plans thereof which will lessen the amount of material to be furnished, then in such event said first party shall so direct in writing, and said second party shall deduct from said consideration such amount thereof at the rate specified in said exhibit C; that said second party agrees that the work shall be completed on or before December 1, 1906, and that it will at all times guard said work and take such reasonable precautions as will prevent injury to person and property, and that it will save said city free and harmless from all liability for any damages that may occur through any fault or negligence on its part; that it will pay for all materials used therein and all work and labor furnished, and save said party free from all liability that may be occasioned by its failure so to do, and from any and all liens of any kind whatever; that, upon the completion of the sewerage system, according to the intent and meaning of the agreement, said first party will at once, as required by the laws of the State of Indiana governing the construction of sewers in municipalities, assess the cost of the construction of said sewerage system upon the property affected thereby, and when the same shall have been done and performed in accordance with the provisions of the act of 1905, *supra*, will prepare and turn over to the second

party bonds bearing interest at a rate not to exceed six per cent per annum, payable semiannually, for the cost of the construction of said sewerage system, as provided therein; that as the construction of the mains and branches of said sewerage system shall progress, and while the trench is open in front of the property of any property owner of said city, second party agrees to bring the inlet of said sewer up to the grade desired by the property owner, at and for the price of twenty cents per lineal foot; that no such inlet will be so brought to grade at such time unless so required by the property owner and upon such terms as to payment therefor as may be agreed upon by said property owner and said contractor.

Then follow plans and specifications referred to in said paragraph, and a bond for $49,000 to the city of Greensburg, executed by Pulse & Porter as principals and the Federal Union Surety Company as surety.

The complaint further alleges that said city never approved said pretended bond for the faithful performance and execution of said contemplated improvement, nor has said city authorized any one of its officers to approve the same, nor has any of its officers attempted to approve said pretended bond; that said bond mentioned herein is attached to said pretended contract, and is in the office of the mayor of said city; that said Pulse & Porter never entered into any written contract with said city for the construction of said sewer, and that no written contract with said city was ever entered into for its construction; that none was ever authorized by said city; that no officer was ever authorized or empowered to enter into a contract in favor of said city, and none was ever ratified by said city; that no bond for the faithful execution of the work, or contract for the construction of said sewer, was ever filed with and approved by the common council of said city, and there is none now approved by said city council; that since June 27, 1905, said Pulse & Porter have been engaged in the construction

of, and claim to have completed, a sanitary sewer for said city upon and along the line of improvement as hereinbefore set out, and are claiming and maintaining that said city ought to accept said sewer, make an assessment roll, turn the same over to the city treasurer, and that he proceed to collect the assessment for the same from the property owners along the line of said sewer; that unless restrained said common council, by the vote of said Elder, Hart and Vogel, together with the vote of the mayor, will accept said sewer, and cause to be made out an assessment roll of all of the abutting property owners, will order said assessment to be paid by them, turn the same over to the city treasurer, and it will become a lien and cloud upon the property of the plaintiff herein in a large amount, to wit, $200, and said treasurer and said Pulse & Porter will proceed to collect said assessment, and, unless enjoined, the same will work great and irreparable injury to this plaintiff; that this plaintiff has at all times resisted this improvement, and at no time has stood by and acquiesced in the construction of the same, but protested against the completion of the work.

It appears from the evidence that on May 10, 1905, the common council of the city of Greensburg, being a city of the fifth class, resolved: "It being deemed necessary that a sanitary sewerage system should be constructed for said city of Greensburg, which, from its size and character, is not only intended and adapted for use of property holders whose property abuts on the line of such sewer, but is also intended and adapted for receiving sewage from collateral drains already constructed, or which may be constructed in the future, the same is hereby ordered as follows, to wit: A complete sewage disposal plant to be located upon the following described real estate [describing certain real estate in said city]." The description of the sewerage improvement covers more than twenty-five pages of typewritten matter, and sets out such matters and things as are required by the law governing the making of such improvements.

Notice was given of the time and place of hearing by property owners along the proposed improvement, and of the passage of the declaratory resolution. The council adopted and placed on file in the city engineer's office, and in the office of the city clerk, maps, plans, profiles and specifications for such improvement, and the manner in which said sewerage system should be constructed, caused the proper notice of their acts to be published, as provided by law, and extended to and gave to property holders or persons interested an opportunity to be heard in the matter. It caused to be published, as required by law, notice of advertisement for bids for making said improvement. Bids were received from contractors from two or three states. A bid in writing was signed by Pulse & Porter, and contained, among other things, an offer to make said improvement, according to the plans, maps, profiles, specifications and the declaratory resolution as hereinbefore mentioned, to the satisfaction of said council, and to furnish all material and perform all labor at and for the price stipulated. The contract was awarded by the common council to said Pulse & Porter.

Afterward a written contract was prepared and presented to Pulse & Porter, who signed it and returned it to the clerk of said city with a bond attached, also signed by them as principals and the Federal Union Surety Company as surety, in the sum of $49,000, conditioned for the faithful performance of said contract. The contract contained a copy of the specifications and so much of said written bid as set forth in detail the price to be paid for such improvement. It also referred to the aforesaid declaratory resolution, plans, maps and profiles, and by reference thereto made them a part thereof. These were the same plans, specifications, maps and profiles that had been formerly adopted by said council and placed on file in the offices of said engineer and said clerk.

Pulse & Porter, having signed said contract, executed a bond and turned the same over to the city, and the city, having taken and kept possession of them, in good faith relying

upon the validity of the proceedings thereof, commenced the construction of said improvement. They employed labor, purchased material, and prosecuted said work continuously from the latter part of August, 1905, until the latter part of November, 1906, when the same was completed, and they expended in the making of said improvement, for labor and material, a considerable sum of money.

During all of said time said city, through its proper officers, was employing and paying inspectors, superintendents and engineers, who were upon the work, continuously supervising and directing the same. Said council had actual knowledge of and was acting upon said contract, and at a regular meeting thereof in May, 1906, said contract was read and discussed in open council, and appellees' Pulse & Porter constructed said sewer according to the terms and conditions of the aforementioned contract, declaratory resolution, maps, plans, profiles and specifications. During this time appellant was a resident of said city, and the owner of and residing in property located on South Broadway, a public thoroughfare of said city, and saw and knew said improvement was being made by Pulse & Porter. He saw them lay the sewer in said street in front of his house sometime in August, 1905. He stood by while said improvement was being made, but gave no notice, verbal or otherwise, to Pulse & Porter, or to said city, or to any one that he had any objections to said improvement, that there was any invalidity in the proceedings thereof, that he would contest any assessment that might be made against his property by reason thereof, or that he was opposing or would oppose said improvement or any assessment of benefits that might be made or occasioned thereby. Nineteen miles of sewer-pipe were laid in the streets of said city and a sewage disposal plant erected at a cost of many thousands of dollars. Two months after the entire work was completed, appellant filed a suit in the circuit court, declaring the entire proceedings void, and asking that the city be enjoined from making any assess-

ment.   He alleged in his complaint that he did not stand by and acquiesce in said improvement, and that he resisted the same; but on the witness-stand he offered no testimony to support said averment.   The records of said city show no entry authorizing a contract for the construction of said sewer, nor any record of the approval of a bond by said city for the faithful performance of any contract for its construction.

Substantially the difference between the first and second paragraphs of the complaint is that the second paragraph alleged that a sum for extra work, performed at the request of the city engineers, was about to be added to the amount due the contractors.   The question of the allowance for extras was not jurisdictional, and could not be tried in the suit at bar.   So that appellant was not injured by the ruling on the demurrer thereto.

The cause was put at issue, evidence heard, and a finding by the court that the plaintiff take nothing by his suit.

Errors relied upon are the action of the court in sustaining the several demurrers to the second paragraph of the complaint, in overruling the demurrer to the second paragraph of the several answers, and in overruling appellant's motion for a new trial.   But the controlling question presented by the various assignments of error, and briefly stated, is whether this suit is a collateral attack upon jurisdictional or administrative steps taken by the city council in the proceeding in question.

In support of the judgment of the court below it is insisted by appellees that this suit is a collateral attack upon the proceedings of a corporation, and that only defects or irregularities affecting the jurisdiction can be made available.   It is a collateral attack.   *McEneney* v. *Town of Sullivan* (1890), 125 Ind. 407; *City of Bloomington* v. *Phelps* (1898), 149 Ind. 596; *City of Elkhart* v. *Wickwire* (1889), 121 Ind. 331; *Lux, etc., Stone Co.*

v. *Donaldson* (1904), 162 Ind. 481; *Casson* v. *City of Leba-non* (1899), 153 Ind. 567.

Admitting that the attack is collateral, it is claimed by appellant that all the steps and proceedings required by the statute to be had previous to the giving of the final notice are jurisdictional; and that the failure to observe any one of them subjects the proceedings to a collateral attack.

It is claimed that the statute (§8959 Burns 1908, Acts 1905, pp. 219, 404, §265) provides that the contract for a municipal improvement shall be in writing, and that the contract in suit is invalid because not in writing, and therefore any lien based thereon cannot be enforced; that the common council can only contract by an order, resolution or ordinance passed in the manner prescribed by statute, and a pretended contract entered into by the mayor and clerk of a city, without such an order, resolution or ordinance is null and void; that where the parties are to meet in the future to execute a contract, the award is not a contract, nor the entering into a contract based upon proposals, it is merely the acceptance of a bid, and does not constitute a contract; that the acceptance of a bid by the common council was not the execution of a contract, because it was expressly stated in the bid that the contract should be entered into within five days, and the act of 1905, *supra,* provides that after the award is made a written contract shall be entered into.

Upon the record, the question then is whether the failure of the common council formally to direct the approval of the bond was a jurisdictional defect. In the case of *Zorn* v. *Warren-Scharf, etc., Paving Co.* (1908), *ante,* 213, this court says: "It is settled that 'the manner of accepting or rejecting bids, and of letting a contract, is purely administrative in character, depending entirely upon the discretion of the common council. *Platter*

v. *Board, etc.* [1885], 103 Ind. 360.' *Ross* v. *Stackhouse* [1888], 114 Ind. 200. But the question of notice inviting proposals for the work is jurisdictional. *Ross* v. *Stackhouse, supra,* and cases there cited.''

In *Ross* v. *Stackhouse, supra,* it is said: ''The matter of accepting or rejecting bids, and of letting the contract, is purely administrative in character, depending entirely upon the discretion of the common council.'' Citing *Platter* v. *Board, etc., supra.*

*Edwards* v. *Cooper* (1907), 168 Ind. 54, was a suit for the foreclosure of a sewer assessment against certain real estate. In the course of the opinion, at page 65, the court say: ''It is further to be recollected, as the Supreme Court of the United States had occasion to point out (*Hibben* v. *Smith* [1903], 191 U. S. 310, 24 Sup. Ct. 88, 48 L. Ed. 195), that assessments for public improvements, under the practice as it exists in Indiana, are in the nature of judgments. When, therefore, we have before us a case like this, in which the validity of an assessment is collaterally questioned, and it can be really said that the extent of the power has been left so elastic as to call upon the tribunal to determine its authority in a particular instance, we are of the opinion that, so long as there remains color of authority to proceed, the decision of such tribunal upon the extent of the power to modify is so far of a jurisdictional nature that the courts are not at liberty, in the absence of fraud, to overthrow the decision on collateral attack.'' The opinion also quotes, at page 70, from the opinion of *Wilson* v. *Simmons* (1896), 89 Me. 242, 254, 36 Atl. 380: '' ' ''Generally speaking, it is the difference between substance and form, between void and voidable, or between void action and imperfect action. Error or nullity goes to the foundations, and discovers that the proceedings have nothing to stand upon, while irregularity denotes that the court was acting within its jurisdiction, but failed to consummate its work in all respects according

to the required forms. The one applies to matters which are contrary to law, the other to matters which are contrary to the practice authorized by law. One relates more to the act, the other to the manner of it. It may be stated as a general rule, that in doubtful cases the courts incline to treat defects in legal proceedings as irregularities rather than as nullities." It may be added that, in the class of cases to which the one at bar belongs, if the defect is not plainly jurisdictional but relates to form rather than substance, the question whether it shall be deemed an irregularity or render action a nullity must be determined mainly by considerations of justice towards the parties to be affected.' It is thoroughly settled that irregularities will not vitiate an assessment on collateral attack, and this doctrine has even been extended to irregularities in what has been termed the acquiring of jurisdiction." Citing *Ross* v. *Stackhouse, supra; McEneney* v. *Town of Sullivan, supra; Barber Asphalt Pav. Co.* v. *Edgerton* (1890), 125 Ind. 455; *Brown* v. *Central Bermudez Co.* (1904), 162 Ind. 452.

Pulse & Porter signed the written proposal and contract, and submitted with it the bond. In doing this they did what was required of them by §8959, *supra.* For a failure to perform the work according to the plans and specifications the bond could have been enforced against them. No fraud is charged or shown. The declaratory resolution adopted, the notice given, the proposal, plans and specifications submitted, the bond executed and approved in accordance with the plans and specifications, all show that the contract was entered into in fact, if not in form.

But there is another reason why appellant should not succeed in this action. The complaint alleges "that this plaintiff has at all times resisted said improvement, and at no time stood by and acquiesced in the construction of the same, but protested against the completion of

said work.'' Said Pulse & Porter, in their answer to said complaint, say, in substance, that said appellant was, during all of said time, a resident of said city, and that he saw and well knew that said improvement was being made, and that benefits therefor would·be assessed against said real estate described in said complaint; that he stood by during the making of said improvement, but, prior to the commencement of said action, gave no notice to appellees that said contract or bond or any of said proceedings were irregular·or illegal, nor did he ever, before said time, give notice that he would contest the validity of any assessment of benefits to·his said real estate; ''that, before the commencement of this action, a large number of the real estate owners of said city had connected with said sewer so constructed by said defendants, and were and are draining their said real estate into said sewer, and thus said property owners are now receiving benefits from said sewer.'' Said defendants further say that said city authorized said property owners to tap said sewer, and, by its common council, appointed an officer to inspect the manner of so doing, all of which was done before the commencement of this suit.

The failure to make objection to an improvement, as against a contractor who is acting in good faith and under color of law, is an acquiescence in what is being done (*Ryason* v. *Dunten* [1905], 164 Ind. 85; *Matthews* v. *Murchison* [1883], 17 Fed. 760), and such person will be denied an injunction to prevent·the enforcement of an assessment. *Ross* v. *Stackhouse, supra; Busenbark* v. *Clements* (1899), 22 Ind. App. 557; *Boswell* v. *City of Marion* (1907), 40 Ind. App. 289, and cases cited; *Liebole* v. *Traster* (1908), 41 Ind. App. 278.

We are not to be understood as intimating that a failure to take steps to arrest an improvement would preclude the making of a defense, where the defect was jurisdictional, nor that an estoppel could not arise where the property owner

does not acquiesce in the construction of the improvement, but, on the contrary, enters his protest thereto.

Judgment affirmed.

Myers, J., did not participate.

Roby, J., absent.