## BASS v. CITY OF CASPER
### (No. 1056; Decided April 11, 1922; 205 Pac. 1008)
### (Rehearing Denied July 20th, 1922)

MUNICIPAL CORPORATIONS—MUNICIPAL IMPROVEMENT ASSESSMENTS— LEVY OF ASSESSMENTS FOR LOCAL IMPROVEMENTS—CONSTITUTIONAL LAW—DUE PROCESS OF LAW—NOTICE—MUNICIPAL IMPROVEMENT DISTRICTS—COLLATERAL ATTACK—INJUNCTIONS—CITY COUNCIL— MUNICIPAL FUNDS.

1. Since Comp. St. 1920, §§ 1985, 1988, with respect to waiver of objections, to local assessments apply only to persons. not filing objections to and not appealing from the council's confirmation thereof, Section 2019, declaring assessments valid, though made by an unauthorized officer or person, if confirmed by the council in good faith without fraud or oppression, applies also to objections made in the confirmation proceeding itself, and covers at least the specific irregularities therein pointed out.

2. No irregularity can be successfully asserted in a suit to enjoin collection of an assessment which would not constitute a valid objection in the confirmation proceedings.

3. While the requirement of Comp. St. 1920, § 1971, that the resolution of intention state the character, kind, and extent of a contemplated improvement, cannot be so rigidly construed as where the plans and specifications are made before the passage of the resolution, instead of afterward, as provided by Sections 1976, 1980, a reasonable description of the improvement contemplated should be given.

4. Where a direct attack is made upon the proceedings of a municipality in levying assessments for local improvements, the rule requiring the provisions of the statute to be followed in the conduct of such proceedings is strictly applied and a departure from the statute in any circumstances will but render the proceedings void.

5. Municipal corporations have no inherent power to levy assessments for local improvements, and may exercise such power when delegated to them by the Legislature, in which the power of taxation is exclusively vested only in the manner provided by Comp. St. 1920, §§ 1966-2040.

6. The Legislature, which has plenary power, subject to constitutional limitations, to provide in what manner municipalities shall proceed in making assessments for local improvements, may say under what circumstances non-compliance with its directions shall be fatal; but since it cannot waive constitutional requirements, nor generally cure constitutional defects by a mere curative provision, it must require that sufficient notice be given a property owner to constitute due process of law.

7. A property owner is entitled to his day in court in proceedings for the assessment of the cost of local improvements and the statute must provide for a notice to be given him which will constitute due process of law.

8. No local assessment is valid unless the council had jurisdiction of the subject-matter, the person, and the particular property assessed.

9. If property assessed for local improvements is within the territory of the municipality, which under Comp. St. 1920, §§ 1966, 1967, has plenary jurisdiction over local assessments, and is not exempt by law, the municipality has jurisdiction of the subject-matter.

10. Unless the city council, as such, initiates and sets in motion the power conferred on it by Comp. St. 1920, §§ 1966-2040, to levy assessments for local improvements, such assessments are void, as otherwise the steps taken would be those of the individual members of the council only.

11. The Legislature may dispense with some of the steps required to set in motion the city's power to make and levy assessments for local improvements, if at some stage of the proceedings the property owner may object, and may provide that the omission of steps and notices not constitutionally necessary shall be considered waived, and the defects cured unless objections are filed in the time

and manner provided by law, all preliminary proceedings, such as resolutions of intention, petitions, etc., being administrative in character, and taken by the council pursuant to its jurisdiction of the subject-matter.

12.  Where the city has set in motion its jurisdiction of the subject-matter in proceedings to levy assessments for local improvements, the final notice of the hearing for the confirmation of the assessment required by Comp. St. 1920, § 1985, constitutes due process of law.

13.  Even if the Legislature did not intend by Comp. St. 1920, § 1988, making the confirmation of local assessments by the city council final and conclusive against all parties not filing objections as required by Section 1985, to make all steps not constitutionally necessary irregularities only on collateral attack, a defect in the resolution of intention in not sufficiently stating the character and extent of the proposed improvement, as required by Section 1971, cannot be taken advantage of in a suit to enjoin collection of an assessment, by property owners who filed no objections to the confirmation thereof.

14.  Under Comp. St. 1920, §§ 1968, 1971, 1976, 1978, 2031, an improvement district may be composed of two or more parallel streets.

15.  The extent of a contemplated improvement rests in the legislative discretion of the city council, and the courts will interfere only to correct a clear abuse of such discretion.

16.  In view of Comp. St. 1920, § 1984, requiring that property be assessed for improvements in accordance with the special benefits conferred on it, an assessment was not void, in the absence of bad faith or fraud, because certain lots on the outskirts of, but included in, the improvement district were not assessed, despite Sections 1983 and 1984, requiring that assessments be levied on property included in the district as described in the ordinance ordering the improvement, where such lots, after the establishment of such district, were embraced in and assessed in connection with a paving district thereafter established, so that the assessment complained of was no larger by reason of their exclusion from the improvement district.

17.  Whether an assessment was void because some property included in the improvement district was not assessed, because a wrong method of apportionment was applied, or because the grade of the street was so raised that the

work done was a damage rather than a benefit, cannot be raised in a collateral proceeding to enjoin the collection of the assessment; the law having created a special tribunal for the determination and equalization of assessments to which, in the absence of fraud, a party complaining must resort.

18. Whether parties damaged by a change in the level of a street have a cause of action against the city therefor cannot be raised in a suit to enjoin the collection of an assessment for such improvement after the contractor has expended time and money in making it.

19. Whether an assessment for street improvements is void because the council did not establish a grade before making the improvement cannot be raised by collateral attack in a suit to enjoin collection of an assessment, at least after the completion of the improvement; there being no statute making the establishment of a grade a condition precedent to the council's right to improve the street, or prohibiting such improvement before the grade is established.

20. Whether or not under Comp. St. 1920, § 1968, construed liberally as provided by Section 2034, any engineer employed by the city for local improvement work may prepare the assessment roll, an assessment confirmed by the city council is not void because the city enigneer did not prepare the roll as provided in Section 1983, in view of Section 2019, providing that it shall be no objection to the validity of an assessment that it was made by an unauthorized officer or person, if confirmed by the city authorities.

21. Comp. St. 1920, § 1982, requiring that the cost of establishing or altering the grade of streets be paid out of the general fund of the city, refers only to the determination and recording of grade lines, and not to the work of grading, which may be paid for by special assessments against the property benefited.

ON PETITION FOR REHEARING.

22. The term "outer limit of the local improvement district" as used in Comp. Stat. 1920, Sec. 1984, in defining the area that shall comprise the fifth subdivision or zone of improvement districts established pursuant to the statute for the apportionment of assessments made for improvement benefits, held in view of the context and the provisions of other sections of the Act to have been used in a relative sense and to mean the outer limits of the zone

area adjoining a particular street and not in an absolute sense to mean the outer limit of the local improvement district in general.

23. Defects in all jurisdictional steps taken in proceedings for the assessment of a special tax upon property for local improvement charges, which depend on the statute merely and involve no constitutional rights, are, in the absence of objections filed as provided by law, after opportunity given for the filing of such objections, to be regarded as mere irregularities and not a justification for collateral attack on the proceedings or order made by the municipal council or other legislative body confirming such assessments.

24. Improvements in municipalities are necessary and taxation by special assessments to the extent of the benefit thereby conferred upon property is justified for the interests of all and are lawfully chargeable to the owner, who, if given an opportunity to test the validity and the justness of the assessment at some stage of the proceedings, is sufficiently protected in his constitutional rights without making the time when he shall have opportunity to so protect himself of the essence.

25. The provision for notice and hearing in proceedings had for the special assessment of property, to meet the costs of local improvements provided by Comp. Stat. 1920, Sec. 1985, and the provision for appeals from the decisions of municipal councils or other legislative bodies with respect to such assessments prescribed by Comp. Stat. 1920, Sec. 1987, constitute due process of law.

APPEAL from the District Court, Natrona County; CYRUS O. BROWN, Judge.

Action by Walter L. Bass on behalf of himself and of others similarly situated, against the City of Casper and its treasurer to enjoin the collection of special assessments for street improvements and to remove the cloud of title caused by said assessments. There was a judgment for plaintiff and defendants appeal. Other material facts are stated in the opinion.

*R. M. Boeke* and *Nichols & Stirrett,* for appellant.

The only question involved is one of jurisdiction; the Wyoming statute provides notice and opportunity to ob-

ject, 1, to the creation of the district, and 2, to the confirmation of the assessment roll; plaintiff failed to make any protest at any time but acquiesced in defendants action. The evidence is not pertinent for the reason that if the city had jurisdiction, defendants are estopped in law to raise objections. If the city had no jurisdiction plaintiff was not required to file protest. The resolution of intention was sufficient to advise all taxpayers of the nature of the improvement contemplated; cases cited by respondent relate to statutes where but one notice is required, whereas two notices are required by our statute; the resolution of intention complied with the statute; the court erred in not sustaining the demurrer of defendants to the amended petition. The proceedings of the city are conclusive. (Sec. 1988, Comp. Stats.) The legislature has power to devise a means necessary for the levy of assessment for local improvements if notice constituting due process of law is given. (Watkinson v. Vaughn, 186 Pac. 753.) The court erred in not sustaining the motion for judgment on the pleadings. Not all of the requirements of the statute are jurisdictional; the resolution of intention conferred jurisdiction. (Hinzeman v. City of Deer Lodge, 193 Pac. 395; 1 Elliott, R. & S. 329; City of Bartlesville v. H. J. Holme, 9 A. L. R. 627; Kerket v. Bocher, 20 Okla. 729; Branting v. Salt Lake City, 153 Pac. 995.) The assessment must be made upon an estimate which may be more or less incorrect. (Supreme Court v. State, 43 Wis. 389.) The notices were sufficient to constitute due process of law. Plaintiff waived his right and is estopped by failing to make objections at the proper time. (Denver v. Dumas, 80 Pac. 114; Caldwell v. Mountain Home, 156 Pac. 909; Milliken v. Crail, 98 N. E. 291; Hansen v. Missouri Valley, 160 N. W. 340; Minnesota Co. v. Billings, 111 Fed. 972; Cooper v. San Francisco, 162 Pac. 631; Wahlgreen v. Kansas City, 21 Pac. 1068; Duffy v. Saginaw, 64 N. W. 581; Moore v. Yonkers, 9 A. L. R. 590; Partee v. Paving Co., 9 A. L. R. 606.) The statute is constitutional. (Webster v. Fargo, 181 U. S. 394.) The proceedings are not open to collateral

attack. (Moore v. Yonkers, supra. Hildreth v. Longmont, 105 Pac. 107.) Objections that the property was not within the assessment district must be made if at all at the hearing upon the assessment roll and is not an object upon which to base a collateral attack. (Beckett v. Morse, 87 Pac. 408; Cosgrove v. Chicago, 235 Ill. 358; Wells v. Wood, 114 Cal. 255.) The judgment of the lower court should be reversed.

*George W. Ferguson,* and *Michael W. Purcell,* for respondent.

There is no evidence that the city has created improvement districts since 1915 under Chapter 120, Laws 1915, nor evidence that the city engineer computed the amount due, nor evidence that plaintiff acquiesced in the action of defendants in making the improvements. Plaintiff is not in the position of a property owner who knows that an improvement is being made which will be assessed against the property, and stands by and accepts the benefits and afterwards objects to paying for the improvement. The plans do not set forth the nature of the work in detail. There was no evidence that the bonds had been issued and sold. The alleged improvements were done under the provision of Chapter 120, Laws 1915. The resolution of intention was sufficient under the statute. 1971 Comp. Stats., and subsequent sections, 1972 to 1983 prescribed the form of procedure. Improvement district No. 4 embraces a number of parallel streets running both east and west and north and south. The city was without jurisdiction in disregarding the law in the formation of the improvement district; in the calculation of the amounts of the assessments and in the manner of levying the same; the cost of the alleged improvement is not chargeable to the property but should be paid out of the general fund. The resolution of intention was insufficient to confer jurisdiction. The statute was taken from Washington state. (City Seattle v. Jones, 163 Pac. 12.) The assessments should have been made under the Zoning method. If a district be formed

under this law by two or more parallel streets, separate accounts of the cost should have been made. The statute requires the engineer to make the assessment, whereas in the present case it is made by a mere employee; the assessment is void and subject to collateral attack. (Watkins v. Zwietusch, 3 N. W. 35; City of Whatcom v. Bellingham Co., 38 Pac. 163; City New Whatcom v. Bellingham Co., 38 Pac. 1024; Robertson Co. v. City Grand Forks, et al., 147 N. W. 249.) A grading assessment is void unless there be a legally established grade. (Joyes v. Shadburn, 13 S. W. 361; Brewster v. City of Peru, 54 N. E. 233; Chicago & N. P. R. Co. v. City Chicago, 51 N. E. 596; Craig v. Gannaway, 61 N. E. 1072.) A street grade can be established only by formal action of the city. (Leadville v. McDonald, 186 Pac. 715.) It must be made by resolution or ordinance. The resolution of intention must be certain in its terms. (25 R. C. L. 155; 28 Cyc. 998; Henderson v. City of Sheridan, 191 Pac. 350; Byers v. City of Sheridan, 191 Pac. 351.) The plea of estoppel is not well taken. The lack of reasonable certainty in the notice goes to the jurisdiction of the city to make the improvement. A complete description of the proposed work in the resolution of intention is not required in Belton v. Gilleran, 38 Pac. 881; Beck v. Ransome Co., 184 Pac. 431, was a paving case wherein the question of jurisdiction arose and the assessment held void for defects in the resolution of intention in not describing the nature of the improvements. Buckley v. City of Tacoma, 37 Pac. 441 sustained a collateral attack on the same ground, also Whitaker v. Deadwood, 122 N. W. 590. Parallel streets cannot be included in an improvement district. (Whitaker v. Deadwood, supra.) Collateral attack for insufficiency of the resolution in describing improvements was sustained in the following cases: Bennett v. City of Emmetsburg, 115 N. W. 582; Kirkville v. Coleman, 77 S. W. 120; City of Boonville v. Stephens, 95 S. W. 314; Cass v. Treasurer, 46 N. E. 729. Unauthorized action, even though acquiesced in will not estop the tax payer from attacking the assessment. (McQuillin Mun. Corps., 2120-2124; City of Bluffton v.

Miller, 70 N. E. 989.)   The following cases bear upon the
question of the sufficiency of the description of proposed
improvements to confer jurisdiction.   (Kline v. Tacoma, 39
Pac. 453; Hawthorne v. Portland, 10 Pac. 342; Chicago v.
Huleatt, 114 N. E. 1021; San Jose Co. v. Auzerais, 39 Pac.
859; City of Atlanta v. Gabbett, 20 So. 306.)   Where no
resolution of intention had been passed and lots were wrong-
fully included, the tax was held illegal.   (Southern Surety
Co. v. Jay, 178 Pac. 95; McRaven v. Clancy, 171 S. W. 88.)
In City of Newport v. Klatch, 224 S. W. resolution of ne-
cessity held to be mandatory and jurisdictional where the
contract was void, collateral attack sustained.   (Ford v. Ex-
celsior Springs Co., 223 S. W. 960.)   Where no estimate of
the cost had been made, held to be subject to collateral at-
tack.   Muskogee v. Samuel, 188 Pac. 669, also where the
street had not been dedicated and accepted.   (Allan v.
Spokane, 184 Pac. 312.)   Where the mayor had not signed
the resolution.   (Hinzeman v. Deer Lodge, 193 Pac. 395.)
For insufficient notice.   (Davis v. Commissioners, 137 Pac.
114.)   Wrongfully including property, (N. P. Ry. Co. v.
City of Walla Walla, 194 Pac. 962), and where lands were
not taxable, (Raish v. University of California, 174 Pac.
952.)   Where not more than one street was included in the
district, (Hutchinson v. City of Omaha, 72 N. W. 218.)   Col-
lateral attacks were sustained against special improvement
tax in the following cases:   Seattle v. Seattle, 97 Pac. 1093;
Rogers v. City of Salem, 122 Pac. 308; Liebermann v. City
of Milwaukee, 61 N. W. 1112; Albuquerque v. Zeiger, 27
Pac. 315; Keys v. Neodesha, 68 Pac. 623.   Curative acts
in laws of this character may cure any defect that does not
go to the jurisdiction of the board over the proceeding.
(City Street Imp. Co. v. Pearson, 185 Pac. 962.)   If the
city be without jurisdiction the owner is not estopped from
objecting to the assessment.   (9 A. L. R. 778.)   Jurisdic-
tional defects were excluded from the operation of Section
1988 Comp. Stats.   The curative sections of the act are un-
constitutional.   There was no authority for assessing the
cost of curbing to individual property as no provision there-

for appears in the statute. Such provision appears in the sidewalk statute, 2739 C. S. The requirements of the statute must be substantially obeyed or its service does not constitute the notice essential to due process of law. The law was not complied with in initiating the improvement process, since the resolution did not prescribe the proposed improvement. It is the plain intention of the law that the character, kind and extent of improvements should be stated to advise the tax payer of what should be done in order that he may make protest. We approve of the doctrine in Chase v. Trout, 80 Pac. 81 cited in respondent's brief as to the sufficiency of the description, character and extent of proposed improvements. Jurisdiction once acquired, subsequent defects are mere irregularities and waived if not objected to. In Watkinson v. Vaughn the resolution of intention failed as required by statute to declare that the district to be assessed was the district benefited held to be a mere irregularity, hence a similarity between the Washington statute and that of Wyoming has been referred to in respondent's brief, we desire to cite the case of Grandin v. Tacoma, 151 Pac. 254. Recent cases on the sufficiency of description or character of proposed improvements in which collateral attack was upheld. (McNutt v. Los Angeles, 201 Pac. 592; Manning v. Den, 27 Pac. 435; Larson v. San Francisco, 186 Pac. 757; City Co. v. Harvey, 169 Pac. 380.)

*R. M. Boeke,* and *Nichols & Stirrett,* in reply.

Respondent acquiesced in the improvements. The record clearly shows this fact. There is a clear distinction between jurisdictional omissions and mere irregularities in their bearing upon the question of due process of law. The question of the formation of an improvement district comprising two or more parallel streets, the engineer's estimate, a question of which engineer, consulting or city, computed the assessment or made up the assessment roll are not questions going to the jurisdiction. (Twentieth Avenue Northeast City of Seattle v. Jones, 163 Pac. 12.) In the Washington case, timely objections were made. A total disregard of the law

in the formation of a district and making of assessments being void, would be subject to collateral attack. The assessment here was made in direct contradiction of the statute and the assessments levied amounted to a confiscation of the property. Of course where no objection was obtained, the proceedings were void. (Whatcom v. Bellingham Co., 38 Pac. 163.) It is incumbent upon respondent to show that he received no notice of the city's intention to make this improvement, nor notice that the amount which was assessed against his property was to be so levied at the time the assessment roll was confirmed. We submit that the tax payer, respondent herein, undoubtedly received sufficient notice to put him on inquiry and advise him that the improvement was being made, and that he, as a tax payer, owned property within the district and would be assessed to pay his proportion of the cost.

BLUME, Justice.

The parties will be hereinafter referred to in the same manner as in the court below. Walter L. Bass, plaintiff, brought this action on behalf of himself and all others similarly situated against the City of Casper and its treasurer, defendants, to enjoin the collection of special assessments made by said city under certain special assessment proceedings for grading and construction of cross walks, curbs and gutters, and to remove the cloud of title caused by said assessments. The proceedings therefor were initiated by the council of said city by passing, on August 4th, 1919, a resolution of intention creating an assessment district and describing in detail the property embraced therein, which includes the property of the plaintiff, and stating that all of said property will be specially benefited by the proposed improvement. Sections 3 and 4 of said resolution are as follows:

"Sec. 3. The character, kinds and extent of said improvements shall be as follows, to-wit: The construction of necessary grading, cross-walks, curbs and gutters, together with the necessary fixtures and attachments for surface

drainage of said streets, and portions of streets, so designated in paragraph one above set forth.

Sec. 4. That no part of said improvement shall be paid out of the general fund or road fund of the city of Casper."

August 18th, 1919, was fixed for the time at which all remonstrances and objections were to be heard. Notice of the hearing was given, but no remonstrances or objections to the improvement were filed. On September 2nd, 1919, accordingly, said council passed an ordinance, reciting the passage of said resolution of intention, and notice thereof, and that no objections had been filed; it was therein ordered that the above improvement should be made, and that plans and specifications should be prepared; the termini of the improvement district were also therein fixed. The plans and specifications were filed on October 20, 1919. A contract for said work, after duly calling for bids, was entered into on October 25, 1919, and the work was completed within about a year. An assessment roll was made up and filed about October 1st, 1920; notice thereof and for the hearing thereon was duly given and the assessment roll was duly confirmed by said council on November 29, 1920, no objections whatever having been filed. Plaintiff's property was assessed in the sum of $185.68. The value of said property does not appear. This action was instituted January 3rd, 1921. The court below entered a decree annulling the assessment made, and from that judgment the defendants have appealed.

The proceedings were had under Chapter 129, (C. 120, S. L. 1915) Sections 1966-2040, of the Wyoming Compiled Statutes, 1920. The council of the city is invested with plenary powers to cause local improvements to be made and assess the cost thereof against the property benefited. (Secs. 1966, 1967.) The procedure to be followed is specified, but it is unnecessary to state it in detail. The improvement must be initiated by the council by a resolution of intention to make it and must among other things state "the character, kind and extent of the improvement." (Sec. 1971.) Notice of the hearing on said resolution must

be given by publication and protests may be filed. If over one half of the owners of the property to be assessed protest, the improvement may, nevertheless, be made by a majority vote of the council, but a protest by the owners of two thirds of the property stops the making of the improvement for a period of at least six months, unless, in the meantime the owners of a majority of the property petition to have said improvements made. (Sec. 1972.) Upon the passage and publication of the resolution of intention, the council has jurisdiction to proceed. (Sec. 1973.) If no remonstrance is filed, the council may make the improvement, pass an ordinance to that effect, cause plans and specifications to be made thereof, call for bids and let the contract. (Secs. 1976, 1980.) When the contract has been awarded the "city engineer shall forthwith proceed to levy an assessment upon the property included in the district as described in the ordinance ordering said improvement," according to a method called the zone system, unless the district is an enlarged district, which is not the case here. (Secs. 1983, 1984.) Notice of the hearing on the confirmation of the assessment roll must be published five times in a daily, or two times in a weekly, newspaper, and at least fifteen days must elapse between the date of the last publication and the date of the hearing. Objections, the grounds of which are not limited by the statute, must be filed in writing, and "objections not made within the time and manner herein prescribed shall be conclusively presumed to have been waived." The council may correct, modify or set aside the assessment roll. (Sec. 1985.) The right of appeal is given to the district court, and from the latter to the Supreme Court, with power in said courts to correct, change, modify, confirm or annul the assessment insofar as it affects the property of the appellant. (Sec. 1987.) Upon the confirmation of the assessment roll by the council, the regularity, validity and correctness of the proceedings relating to the improvement and assessment shall be conclusive in all things upon all parties and cannot in any manner whatever be contested in any proceedings whatsoever by

any party not filing objections to the confirmation of the assessment roll and not appealing, except (1) where the property does not appear on the assessment roll, or (2) if the assessment has been paid. (Sec. 1988.) If the council has acted in good faith, without fraud or oppression, the assessments made are declared to be valid, and it shall be no objection to the validity thereof, among other things, that it was made by an unauthorized officer or person, provided it is confirmed by the council. (Sec. 2019.) It may be said here that manifestly the provisions of waiver in Sec. 1985 and Section 1988 apply to persons not filing objections; that is to·say, they apply to independent and collateral proceedings and not to objections made in the confirmation proceeding itself. (In Re Grandview Local Improvement Assessments, (Wash.) 203 Pac. 988. Van Der Creek v. Spokane, 78 Wash. 94, 138 Pac. 560.) Inasmuch, therefore, as full provision has been made by these sections in regard to collateral proceedings, it would seem clear that the provisions of Section 2019 are intended to apply as well to objections made in the confirmation proceeding itself, and are intended to cover the specific irregularities therein pointed out, and, perhaps, other minor irregularities; provided, however, that the council has acted in good faith, and without fraud or oppression. No irregularity, of course, can be successfully asserted in a suit to enjoin the collection of an assessment, which would not constitute a valid objection, in the confirmation proceedings. (See Collins v. Ellensburg, 68 Wash. 212, 122 Pac. 1010.)

1.   Counsel for plaintiff contend that the resolution of intention failed to state the character and extent of the improvement to be made, as required by Section 1971; that this requirement is jurisdictional and that hence the assessment made is void. Under our statute the plans and specifications for the work contemplated are made after the resolution of intention is passed, and we cannot give to the requirement of describing the character and extent of the proposed improvement that rigid construction that is given it where the plans and specifications are made before the

passage of the resolution of intention. Still the intention undoubtedly was to enable the property owner to make up his mind as to whether or not to remonstrate against the proposed improvements, and give him an opportunity to lay his objections, if any, before the council. Hence a reasonable description of the improvement contemplated should be given. In the case at bar, the proof shows, for instance, that no grade had ever been established by the city, and hence it was impossible, at the time of the passage of the resolution of intention, for the property owner to estimate as to how much grading, if any, was to be done. Many cases have held that a description of the improvement, such as given in the resolution of intention, involved in this case is defective. We cite only a few. (City of Chicago v. Iron Co., 293 Ill. 109, 127 N. E. 349; Evans v. City of Helena (Mont.), 199 Pac. 445; Buckley v. City of Tacoma, 9 Wash. 253, 37 Pac. 441; Schwiesau v. Mahon, 128 Cal. 358, 60 Pac. 927.) The rule that the provisions of the statute must be pursued is applied with much strictness in cases where there is a direct attack upon the proceedings, and where there is a departure from the statute in any substantial particular the proceedings will be ineffective. (Elliott on Roads & Streets (3rd Ed.) Sec. 328.) Municipal corporations possess no inherent power to levy assessments for local improvements. There was no such power at common law. Under our system the power of taxation is exclusively vested in the legislative branch of the government, which, however, may delegate it to municipal corporations. If it has been so delegated, then the mode of exercising the authority is that provided by the statute and no other. (Hancock v. City of Muskogee, 250 U. S. 454, 39 S. Ct. 528, 63 L. Ed. 1081; Birmingham v. Wills, 178 Okla. 198, 59 So. 173; Elliott, supra, Sec. 665.) If, then, the objections to the sufficiency of the description of the improvement had been made in the proceedings for confirmation of the assessment herein, we think the defects pointed out would have been fatal. But this was not done. In the case at bar the attack is a collateral attack on the judgment rendered by

a tribunal, established by law, finally making and confirm-
ing the assessment herein, and the question is whether that
can be done in an equity suit, such as this, or whether the
objection should have been raised before the council of the
city in the manner pointed out by statute.

Many cases are cited by plaintiff's counsel. It is impos-
sible, in order to retain this opinion within reasonable com-
pass, to review them all. But we shall refer to some general
statutory provisions which underlie at least many of the
cases, in order to show that they are distinguishable from
the case at bar. The California courts have generally ad-
hered to the holding—though this holding is somewhat
shaken by Watkinson v. Vaughan, 182 Cal. 55, 186 Pac.
753—that the requirement that the extent of the improve-
ment must be stated in the resolution of intention is juris-
dictional, that a failure to do so is fatal to an assessment
under it, notwithstanding the curative sections of the stat-
ute. Many of the cases from that state have been decided
under the Vromen Act and amendments thereto, or a stat-
ute similar thereto. Examining that act (c. 153, Laws 1885)
we find that the assessment is made by the Superintendent
of Streets without any notice whatever to the property
owner, and assessment warrants are issued thereon. Appar-
ently the property owner is bound to follow the proceedings
and know at his peril when the assessment warrant is issued.
Under Section 11 of the act he has the right to file objections
to the assessment; the right is limited in scope. Within
thirty days after the date of the warrant he may appeal to
the council from · the ruling of the Superintendent · of
Streets, upon publishing notice to that effect for five days.
The decision of the council is conclusive as to all ''errors, in-
formalities and irregularities,'' and all defects in any of
the proceedings prior to the assessment are cured, provided
that ''notice of the intention of the City Council to order
the work to be done'' has been published for the length of
time prescribed by law. The improvement act of 1911 (c.
397) closely follows the provisions of the Vromen act. So
in Montana, under section 13, c. 89, no irregularities or de-

fects are cured, except under the special proviso that "the notice of the passage of the resolution of intention has been actually published and the notice of improvement posted, as provided in this act." The proviso in Sec. 9, c. 142, Montana Session Laws 1915, in requiring that the provisions for the resolution of intention shall have been strictly complied with, is even stronger. Sec. 644 of the Rev. Laws, Oklahoma, 1910, so far as applicable here, provides that an assessment shall not be set aside for any reason "other than for the failure of the city council to adopt and publish the preliminary resolution provided for." Of course, where the legislature, as in the foregoing states, provides that the preliminary notice cannot be dispensed with or waived, no other conclusion, since the statute is the source of the power of the municipality, could be reached than that such notice is jurisdictional. Cases decided under such statutes can be of no particular help in determining the question before us. In Utah the only objection that can be made to the assessment is that it is unequal and unjust. And in no event does the statute attempt to cure anything but "errors or irregularities." (Secs. 682, 683, Comp. Laws 1910.) In Oregon, the cases of Henderson v. City of Sheridan, 97 Or. 149, 191 Pac. 350, and Byers v. City of Sheridan, 97 Or. 154, 191 Pac. 35, were decided under the provisions of the charter of that city, which is found in Session Laws 1891, p. 361 *et seq.* The only notice provided for is that in Sec. 58, which must be given before the improvement is ordered. The assessment is provided for in Sections 65 and 66, and is made according to area and no notice thereof whatever is given to the property owner. The situation is similar in other cases cited from Oregon. These cases, therefore, present no situation like that in the case at bar. Buckley v. City of Tacoma, supra, was decided under a statute containing no curative or waiver provisions. Most of the cases cited from Illinois are cases where the questions involved were raised on direct attack. Nor do we find curative or waiver provisions in the statutes of that state governing local improvements. That appears to be true also in

most of the other states from which cases are cited, or the curative provisions go only to irregularities. City of Bluffton v. Miller, 33 Ind. App. 521, 70 N. E. 989, was an action to enjoin the contractor from doing the work contemplated under the improvement, and the action was held to be proper. We may say in this connection, that it may well be questioned whether a property owner should be compelled to wait in all cases, and solely rely upon his right, to appear in the confirmation proceedings in order to defeat the assessment against his property. Where a remonstrance, for instance, is filed by the owners of two thirds of the property subject to assessment and it is ignored, it may well be held that, particularly in view of our re-assessment law, the owner subject to assessment should have the right to enjoin the performance of work not legally let. In such and perhaps other cases where the essential steps required by statute are not taken, the remedy provided by statute should not, perhaps, particularly in view of our re-assessment law, be considered entirely adequate as to one who institutes his action of injunction seasonably and before intervening rights have accrued. It is said by Elliott, supra, Sec. 770, that one who asks for an injunction before the work has been done or rights have been acquired under the contract is in a very much better situation than one who has exercised no such diligence. Thus while, in the administration of justice, the rights of diligent parties whose property is sought to be assessed, should be protected by a court of equity, at least where no other adequate remedy is provided by law, so, on the other hand, we should not forget that due consideration must also be given to the rights of a contractor whose money and labor is expended to benefit and enhance the value of the property of others. And it seems to be true, as said in the case of City of Denver v. Campbell, 33 Colo. 162, 171, 80 Pac. 142, that:

"the trend of the decisions of recent years involving questions affecting the validity of municipal improvements, is to be less technical than formerly, and to require owners whose property may be assessed for such improvements

to be at least reasonably diligent in protecting their rights before the improvements are completed."

Inasmuch, however, as this case was not brought to enjoin the work under an improvement contract, it is unnecessary for us to determine what our decision would be if such a case were brought before us. Without analyzing the cases cited by counsel for plaintiff further, let us simply say that we have examined them all, and we deem none of them decisive of the case at bar.

As we said, the legislature, subject to constitutional limitations, has plenary power to provide in what manner the municipality shall proceed in making assessments for local improvements. Its directions must be followed, and at least a substantial compliance therewith is essential in order to make the assessment valid. If Section 1971 stood by itself, without being modified, conditionally or otherwise, then we should be compelled to hold that failure to comply therewith in a substantial manner would be fatal. But the legislature has a right to say under what circumstances non-compliance with certain directions shall be fatal. (Ex Parte Gudenrath, 194 Ala. 568, 69 So. 629.) It cannot, of course, waive constitutional requirements, or, generally speaking, cure constitutional defects by a mere curative provision. (City of Denver v. Londoner, 33 Colo. 104; City Street Imp. Co. v. Pearson, 181 Cal. 640, 185 Pac. 962.) A property owner is entitled, at least in assessment proceedings like ours, to his "day in court," and the legislature must provide sufficient notice to be given him which will constitute due process of law. No assessment can be valid, unless the council in making it has jurisdiction of the subject matter and of the person and the particular property assessed. The principles relating to this subject are stated or discussed in Elliott, supra, Sections 329, 334-339, Sec. 360; Jackson v. Smith, 120 Ind. 520, 22 N. E. 431; Brown v. Central Bermudez Co., 162 Ind. 452, 69 N. E. 150; Pittsburgh etc., R. Co., v. Tabor, 168 Ind. 419; 77 N. E. 741; City of

Duluth v. Dibblee, 62 Minn. 18, 63 N. W. 1117; City of Birmingham v. Wills, supra. The statute confers upon municipalities plenary jurisdiction over local assessments, and if the particular property sought to be assessed is within the territory of the municipality, and is not, by law, excluded from the operation of the power granted by the legislature, then the municipality may be said to have jurisdiction of the subject matter. The council must, of course, as such, in some manner initiate and set in motion the power conferred upon it by law, or unless it does so, the steps taken would be those of the individual members of the council and not the council itself. (Garner v. City of Anniston, 178 Ala. 430, 59 So. 654; Brown v. Bermudez Co., supra.) The statute prescribes various steps to set this power in motion, among which are (1) the resolution of intention; (2) the ordinance ordering the improvement; (3) the letting of the contract. Jurisdiction of the persons affected is by the statute directed to be acquired by two different notices, the first in connection with the resolution of intention; the second in connection with the confirmation of the assessment roll. Unless the legislature directs otherwise, not all of these steps are necessary, and not both of these notices need be given to confer complete jurisdiction, assuming that, pursuant to law, the steps actually taken and the notice actually given constitute due process of law. The legislature has the right to dispense with some of these steps in the first instance, if at some stage of the proceedings, the property owner has been left the opportunity to object, and the legislature has the equal right to provide that the omission of steps and notices, not constitutionally necessary, shall be considered waived and the defects cured, unless objections are filed in the time and manner provided by law. (Ex Parte Gudenrath, supra; City of Denver v. Campbell, supra; City of Denver v. Dumars, 33 Colo. 96; 80 Pac. 114; City of Denver v. Londoner, 33 Colo. 104; 80 Pac. 117; Londoner v. Denver, 210 U. S.

373; 28 Sup. Ct. 708; Hancock v. City of Muskogee, 250 U. S. 454, 39 S. C. 528; Barfelt v. Gleason, 111 Ky. 491, 515, 63 S. W. 961; Spencer v. Merchant, 125 U. S. 345, 8 Sup. Ct. 921; Adams v. City of Roanoke, 102 Va. 53, 63; 45 S. E. 881; Chase v. Trout, 146 Cal. 359, 80 Pac. 81; Watkinson v. Vaughn, supra.) It has been repeatedly held that all preliminary proceedings in connection with local improvements, such as resolutions of intention, petitions, and others, may be dispensed with by the legislature in the first instance. These steps are administrative in character and are taken by the council pursuant to its jurisdiction of the subject matter. We need cite only a few cases. (Milliken v. Crail, 177 Ind. 426, 98 N. E. 291; Brown v. Bermudez Co., supra; Allen v. Bellingham, 77 Wash. 469, 473, 137 Pac. 1010; Chandler v. Puyallup, 70 Wash. 622, 127 Pac. 293. Ex parte Gudenrath, supra; City of Birmingham v. Wills, supra; City of Denver v. Londoner, supra; Londoner v. Denver, supra; Hancock v. City of Muskogee, supra.) And, assuming that the city has set in motion its jurisdiction of the subject matter—and there can be no question in this case but that it has done so without reference to the resolution of intention—then, under our statute, the final notice given of the hearing for the confirmation of the assessment is and constitutes due process of law. (Ex parte Gudenrath, supra; Birmingham v. Wills, supra; Londoner v. Denver, supra; Hancock v. City of Muskogee, supra; Hughes v. Parker, 148 Ind. 692, 48 N. E. 243; Pittsburgh etc. R. Co. v. Fish, 158 Ind. 525, 63 N. E. 454.) What the legislature could have dispensed with in the first place, it has power, as we have seen, to declare waived, or the defects therein cured, unless objections are filed as provided by law. (See cases above cited. Also 26 R. C. L. 94; Tibbetts Pac. Co. v. Firth (Cal. App.) 200 Pac. 976; Ensign v. Barse, 107 N. Y. 338, 14 N. E. 400, 15 N. E. 401; Nottage v. Portland, 35 Or. 539, 58 Pac. 883, 76 A. S. R. 513; Thomas v. Portland, 40 Or. 50, 66 Pac. 439.) And the question, there-

fore, is, whether, in spite of the fact that the city council had in this case, so far as constitutional requirements are concerned, full and complete jurisdiction over the subject matter as well as of the persons and property of the plaintiff and other property owners in the district without reference to the resolution of intention or the notice thereof, the legislature has determined that this resolution of intention of the character mentioned in Section 1971 and the notice thereof is, nevertheless, indispensable, or, on the other hand, has the legislature determined that unless objections are filed as mentioned in Section 1985 in the proceedings for confirmation of the assessment roll, the defects in said resolution of intention and the notice thereof, are waived and cured, as provided in said Section 1985 and in Section 1988? Let us examine some of the cases bearing on the question in hand, decided in states where the proceedings for local assessments are similar to those in this state. In Collins v. Ellensburg, 68 Wash. 212, 122 Pac. 1010, the court, speaking of an estimate required by law, said:

"Since the legislature might have dispensed with any estimate, the failure of the council to make any would doubtless be held an irregularity which might be waived by a failure to protest."

The effect of this language is, that insufficiency in those steps which the legislature might have dispensed with in the first instance will only be considered an irregularity which is waived by not filing objections to the confirmation of the assessment. The case of Allen v. Bellingham, 77 Wash. 469, 473, 137 Pac. 1010, deals with a case of reassessment, of the intended making of which notice was given, just as notice is provided to be given of the proposed confirmation of an original assessment. The principle involved accordingly is the same. The court in that case said:

"There is no constitutional requirement which makes it necessary that notice of a proposed improvement be

given by resolution or otherwise. The legislature would have had the power to have dispensed with such a notice. Where an opportunity has been given to present objections to a reassessment roll, a failure on the part of the taxing officers to initiate the improvement by a proper resolution does not avoid the assessment if the requirement of the law which was not observed was one which the legislature might have dispensed with. (Ricker Bros. v. Everett, 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582; Collins v. Ellensburg, 68 Wash. 212, 122 Pac. 1010.) As already stated, in the present case there is no claim that an opportunity was not given to present objections to the reassessment roll which is attacked by this proceeding.''

(See also Van Der Creek v. Spokane, 78 Wash. 94, 138 Pac. 560, and In Re Grandview Local Improvement Assessments, (Wash.) 203 Pac. 988.) The case of Schintgen v. La Crosse, 117 Wis. 158, 94 N. W. 84, also involves a reassessment, where the property owner was deprived of the right of the benefit of the hearing on the initial resolution. Speaking of notice to the property owner and when it should be given him, the court said in part:—

''But this notice need not necessarily be before the improvement is made. The property owner has no constitutional right to be heard as to the character of the improvement nor the manner of its construction. It is enough if the law provides for notice and hearing at some time during the proceedings on the question as to what· proportion of the tax should be assessed against his land. (Hennessy v. Douglas Co., 99 Wis. 129, 74 N. W. 983; Meggett v. Eau Claire, 81 Wis. 326, 51 N. W. 566.) It would seem necessarily to follow that, if a reassessment law gives the property owner full notice and opportunity to be heard as to the amount of his assessment, it cannot be held unconstitutional because the property owner had no opportunity to be heard as to the nature of the improvement or the manner of making it, provided there was

a law in existence at the time of the improvement authorizing such work to be done and paid for by special assessments upon property owners. In the present case it appears that under the provisions of the charter of the city the common council had power to cause the street to be improved and the expense thereof to be paid by assessment upon adjoining property. (Laws of 1887, Ch. 162, sub Ch. 7, Secs. 1-5.) It is true that these provisions provide for notice to the adjoining property owners before the work is done, and hearing as to the manner of doing the work; but, as we have seen, this requirement was not an essential, and might originally have been dispensed with by the legislature, provided notice was at some time during the proceedings given to the property owner and he was given a chance to be heard as to the amount of his assessment. This opportunity is given him by the reassessment law under consideration.''

In Indiana also the proceedings in connection with local assessments are similar to those in our state. The Supreme Court has a number of times passed upon the nature and necessity of the resolution of intention and has uniformly held it to be not jurisdictional, and to be advisory only in its nature. (Milliken v. Crail, 177 Ind. 426, 98 N. E. 291; Pittsburgh etc. R. Co. v. Fish, 158 Ind. 525, 63 N. E. 454; Hughes v. Parker, 148 Ind. 692, 48 N. E. 243; Barber Asphalt Co. v. Edgerton, 125 Ind. 455, 25 N. E. 436; Quill v. Indianapolis, 124 Ind. 292, 23 N. E. 788, 7 L. R. A. 681.) To the same effect are R. Co. v. Hays, 17 Ind. App. 261; Willard v. Albertson, 23 Ind. App. 165. In Pittsburgh etc. R. Co. v. Fish, supra, the court said:

''With respect to municipal improvements, it is settled in this, and most other states, that the subject-matter being clearly within the jurisdiction of municipal legislative bodies, jurisdiction over the persons of those affected by an improvement will be sufficiently obtained if, at any step in the proceedings, and before the assessments are

made, an opportunity is afforded to all persons feeling aggrieved to make whatever defense they may have against the assessment of their property. It has therefore been held that notice of the resolution of necessity, the purpose of which is merely to invite the views and counsel of the property owners, is not essential to jurisdiction, or to the validity of an assessment."

In Hughes v. Parker, supra, the court said:

"It is first contended that the common council of the city of Greenfield never acquired jurisdiction of the subject-matter of the improvement or of the persons of the property owners as assessed therefor, for the reason that no resolution of necessity was ever passed, or notice thereof given, as required by Section 2 of the Barrett law (Acts 1889, p. 237), Section 4289, Burns' R. S. 1894. It must be admitted that the proceedings of the council in this matter were irregular. The resolution of necessity should have been adopted, and notice thereof given as provided in the statute. But it has been repeatedly held that such resolution and notice are not essential to give jurisdiction to the council, provided only that notice and a hearing are given to the property owners before the making of the final assessments. This notice and hearing were had in the case at bar."

The law on local assessments in Alabama resembles closely that in this state. The provision making the confirmation of the assessment by the council conclusive, as contained in Section 1988 of our statute is, however, not found in the Alabama law. The court in that state holds that no collateral attack can be made on the order of confirmation because the objections not made to the confirmation of the assessment are waived. The provision that the owners of two-thirds of the property may stop the proceedings is not found, but there is a provision, as there is in the Indiana law, that if the owners of more than one-half of the property object, then the improvement cannot be made unless ordered by two-thirds of the council.

The principle involved, therefore, is the same; the difference is only in the degree of the effect of the objections. The principal cases in Alabama dealing with questions similar to the case at bar are Ex Parte Gudenrath, 194 Ala. 568, 69 So. 629; Garner v. City of Anniston, 178 Ala. 430, 59 So. 654; City of Birmingham v. Wills, 178 Ala. 198, 59 So. 173. The latter case is one like that at bar, and is so nearly in point as to be persuasive authority here. The court in an able discussion of the subject says in part:

"As has been noted already, complainant does not aver lack of due notice to appear and defend against the final assessment. Nor does he deny that he allowed the assessment to go against him by default. True, he complains that the notice, required by the statute (Sections 1362, 1363) as preliminary to action on the part of the city council confirming the original ordinance or resolution by which it was finally determined to proceed with the work, was not given as required by law. Without impairing the argument for our position, we may assume that it was not given at all, for that default might have been brought to the attention of the governing board of the city of Birmingham at the hearing fixed for the final determination of the assessment. As for the right to confirm, amend, modify, or rescind the original ordinance or resolution, the first hearing provided for by the statute is not jurisdictional, but advisory only. The statute does not contemplate at this point that any objections or protests going to the validity of the ultimate assessment shall be determined.     *     *     *     *

The preliminary notice, and all those other steps preliminary to the notice of the assessment and the assessment itself, about the absence or perversion of which the bill complains, are provisions of legislative grace. Being written in the statute, they must be observed or the property owner may at the final hearing have the benefit of the omission of such of them as may be considered essential

where there has been no waiver. But their omission may be waived.''

Then the court discusses the assessment proceedings and the fact of waiver unless objections are filed and declares that none of the omissions in the preliminary proceedings can be considered as jurisdictional in a collateral attack in the following language:

''The effect of the statute is to make material defects or omissions in them just cause for an abatement of the proceeding, but its intention is to destroy all distinctions between defects or omissions and mere errors or irregularities in the preparatory steps in those cases in which the owners, after due notice and an opportunity to present every defense, remains silent and inactive. However harsh such proceedings may seem, and however oppressive the result may be in particular cases, the consequences are not more extraordinary or unconscionable than such as may be observed in cases where parties allow the judgments of customary courts of justice to go for their adversaries by default in the usual course of judicial procedure.''

See also City of St. Paul, 94 Minn. 115, 102 N. W. 221, and the Minnesota cases there cited. We cannot escape the force of these decisions. The Indiana law is, as a whole, at least as strict in its requirements as to preliminary proceedings as ours. In Alabama, the conclusion in the case from which we have quoted was reached under a provision of the statute that objections not filed to the confirmation of the assessment are waived. We have not only a similar law in Section 1985 of our statute, but in addition thereto the broad and sweeping provision of Section 1988 makes the confirmation of the assessment final and conclusive against all parties, not filing objections as required, in all proceedings of every nature except under two conditions not here involved. The language of the latter section seems to be broad enough to

indicate that the legislature intended to make all steps, not constitutionally necessary, irregularities only in a collateral attack and which are waived unless objections thereto are filed as provided in Section 1985. Even then the facts in this case do not require that we go to the full length of the holding of the cases mentioned, but it is fairly impossible to avoid deciding and we are compelled to hold, that the defect in the resolution of intention in not sufficiently stating the character and extent of the proposed improvement cannot be taken advantage of in this collateral proceeding, but that it was waived when no objections were filed to the confirmation of assessment herein made, of the hearing on which the property owners affected, including the plaintiff, had due notice. There was at least an attempt to comply with the law and the council acted under color of authority, and we cannot, under the circumstances, consider the defect fatal. (See Barber Asphalt Pav. Co. v. Edgerton, supra; Pittsburgh etc. R. Co. v. Hays, 17 Ind. App. 261; 44 N. E. 375; Dailey v. Higman, 43 Ind. App. 357, 87 N. E. 669; Menzie v. City of Greensburg, 42 Ind. App. 657, 85 N. E. 484.) Provisions making the confirmation by the council conclusive are said to be in the nature of statutes of limitation. (City of Denver v. Campbell, supra.) As to such provisions, sustaining our holding herein, (see Byram v. Foley, 17 Ind. App. 629, 47 N. E. 351; Riverside Park Assn. v. City of Hutchinson, 102 Kans. 488, 171 Pac. 2, and cases there cited; Loomis v. City of Little Falls, 176 N. Y. 31; 68 N. E. 105 and cases cited; Hildreth v. Longmont, 47 Colo. 79, 103; 105 Pac. 107.) In view of our holding on the foregoing point, we deem it unnecessary to decide the effect thereon of Section 2027 of our statute.

2. The plaintiff contends that the law does not authorize the formation of an improvement district composed of two or more parallel streets, as was done in this case. We think, however, that this contention is not good under

our statute. Section 1971 provides that the resolution of intention shall specify the "streets, street or part of street proposed to be improved." Section 2031 provides that:

"When streets of different widths have been or are hereafter included in any paving district, an adjustment shall be made in the assessment for the improvement thereof" etc.

Section 1968 provides that the term "street" shall be held to include "streets." (See also Sections 1976 and 1978.) These sections clearly contemplate that a number of streets may be embraced in one district. The question of the extent of the improvement and what shall be included in it, rests in the legislative discretion of the city council, and the courts will interfere only to correct a clear abuse of the discretion, of which there is no evidence in this case. (Frazier v. City of Rockport (Mo. App.) 202 S. W. 266; Church v. People, 179 Ill. 205, 53 N. E. 554; Davis v. City of Ritchfield, 145 Ill. 313; 33 N. E. 888, 21 L. R. A. 563; 2 Elliott, supra, Sec. 694, 616.) In Frazier v. City of Rockport, supra, the court said:

"As a practical matter to require each street to be treated as one improvement and the property fronting on that street to participate only in the cost of improving it would lead to great difficulties, often forbidding an improvement entirely or rendering it inadvisable unless adjacent streets were similarly improved and the whole done as one improvement. Especially is this true in country towns in circumstances where the embracing of several streets in one scheme of improvement benefits every piece of property abutting upon any of the streets so improved, and it is only in this way that the improvement can be had. We are of the opinion that, in the absence of any facts showing that the proposed scheme should not be regarded as one improvement or that the council has abused its discretion in the matter, the courts

should not interfere, in the absence of a statute forbidding the inclusion of several streets in one proceeding.''

3.   The plaintiff claims that the assessment is void on account of the fact that some of the property included in the improvement district by ordinance was not assessed.   It is true Section 1983 provides that the assessment shall be levied ''upon the property included in the district as described in the ordinance ordering said improvement,'' and Section 1984 provides that ''the assessment district shall include all the property between the termini of said improvement,'' and that ''all property included within said limits * * * shall be considered and held to be the property * * * benefited by such local improvement.''   But it further provides that said property shall be assessed ''in accordance to the special benefits conferred on such property.''   The facts herein appear to be, as we understand the record, that certain lots on the outskirts of the improvement district were not assessed, though included therein by the ordinance, because subsequent to the establishment of said district they were embraced in, and assessed in connection with, a paving district that was thereafter established. It does not clearly appear, but we presume, that no work such as contemplated in the improvement district here in question was done to benefit said excluded lots, but that the necessary grading, curbing, etc., was charged up against said lots in connection with the assessment in the paving districts.   If such is the case, it would seem clear that plaintiff was not in any way prejudiced, and that his assessment was no larger by reason of the exclusion of the lots in question, and that whatever was done, was done in good faith and without fraud.   In any event the gist of the objection goes to the amount for which the plaintiff was assessed; he could not be prejudiced unless, by reason of property omitted from the assessment roll, his own assessment were increased.   But the law has created a special tribunal for the purpose of determining and equalizing the assessments against the various properties, and we are clear that both upon reason as well as authority, the plain-

tiff cannot raise the point in question in a collateral pro-
ceeding, but must, in the absence of fraud, resort to the
special tribunal thus created by law, which he has failed to
do in this case. (Houck v. Roseburg, 56 Or. 238, 108 Pac.
186; Gorman v. State, 157 Ind. 205, 60 N. E. 1083; Hil-
dreth v. Longmont, 47 Colo. 79, 97, 105 Pac. 107; Spokane
v. Preston, 46 Wash. 98, 89 Pac. 406; Auxmiller v. North
Yakima, 73 Wash. 96, 131 Pac. 470; Larsen v. San Francis-
co, 182 Cal. 1, 186 Pac. 757; Cohen v. Alameda, 183 Cal.
519, 191 Pac. 1110; Baley v. Hermosa, (Cal.) 192 Pac. 712;
Andre v. Burlington, 141 Iowa 70, 117 N. W. 1082; Mush-
baugh v. Peoria, 260 Ill. 27, 102 N. E. 1027; Cosgrove v.
Chicago, 235 Ill. 358, 368; Page and Jones, Taxation & As-
sessments, Sec. 645; McQuillan, Mun. Corp., Sec. 2092.)
In Spokane v. Preston, supra, the court said:

"Another point urged by appellants is that property
which should have been included in the assessment district
was omitted. This also goes to the amount of the assessment
only. Appellant's property was properly within the district
and was subject to assessment. The assessment was made
on the principle of benefits accrued, and if appellant's prop-
erty was assessed too much and not ratably with other prop
erty, similarly benefited, it was their duty to so inform the
council and there object to the amount of the assessment."

In Larsen v. San Francisco, supra, the court said:

"If the owner of each of these parcels could separately
maintain an action and therein reopen the entire question
of benefits received and the proportion to be charged against
the respective parcels, it is plain that any proceeding of
such magnitude, or even of far less extent, could, and prob-
ably would, be effectually blocked by unending litigation.
Such construction is not to be indulged if it produces such
absurd consequences."

This principle also controls the objection that a wrong
method of apportionment was applied in this case. (See
In Re Grandview Imp. Assessment, (Wash.) 203 Pac. 988.)
The principle also controls the claim herein made that the
grade of the street in front of the property of some of the

parties interested therein was raised to such an extent that the work done was really a damage rather than a benefit. (Moore v. Yonkers, 235 Fed. 485, 149 C. C. A. 31, 9 A. L. R. 590; Evans v. Des Moines, 184 Ia. 945, 169 N. W. 336.) It may be, without deciding the point, that under our constitution the parties who were damaged by the change of the level of the street have a cause of action against the city therefor, but if so, that is an independent action, and the question cannot be raised in order to defeat the assessment made herein after the contractor has expended his time and money in making the improvement herein. (See Butters v. Oakland (Cal. App.), 200 Pac. 354 and cases cited; Duncan v. Ramish, 142 Cal. 686, 76 Pac. 661; Elton v. Tacoma, 57 Wash. 50, 106 Pac. 478, 107 Pac. 1061.)

4.   Counsel for plaintiff also contend that the assessment is void for the reason that the council of the city did not establish a grade on the streets in question. We have already mentioned this matter in connection with the question of stating the character and extent of the improvement in the resolution of intention. We must confess that we do not understand why a city council would, in the exercise of prudence and fairness to the citizens, undertake to grade a street without a definite, fixed grade established on its records, and it is, perhaps, true that proceedings for the improvement of a street prior to the establishment of such grade should, upon reasonable objection and in an appropriate proceeding, be held invalid. (State v. District Court, 44 Minn. 244, 46 N. W. 349; State v. Judges of the District Court, 51 Minn. 539, 53 N. W. 800, 55 N. W. 122; Wingate v. Astoria, 39 Or. 603, 65 Pac. 982.) But there is no provision in our statute making the establishment of a grade a condition precedent to the right or power of the council to improve the street, or prohibiting such improvement before the grade is established, and we are clearly of the opinion that the question cannot be raised by collateral attack in an action such as this, at least after the completion of the improvement. (Daly v. Gubbins, 170 Ind. 105, 110, 82 N. E. 659; Birmingham v. Wills, supra; Shepard v. People, 200

Ill. 508, 65 N. E. 1068; Walker v. People, 202 Ill. 34, 66 N.
E. 827; Fitzhugh v. Duluth, 58 Minn. 427, 59 N. W. 1041;
Wingate v. Astoria, 39 Or. 603, 65 Pac. 982.)

5.    Plaintiff also contends that the assessment is void
because the "city engineer" as provided by Section 1983,
did not prepare the assessment roll.   The assessment herein
was made by an assistant to the consulting engineer.   Sec.
1968 provides that "the term engineer" shall be deemed to
mean the city engineer, town engineer, or any engineer em-
ployed by the city or town for local improvement work.   It
would seem that under this provision, construing it liberally
as Section 2034 provides, it was probably intended that any
engineer employed by the city for that purpose could make
the assessment.   But whether that is so or not, Section 2019
provides that it shall not be an objection to the validity of
an assessment "that the same was made by an unauthorized
officer or person, if the same shall have been confirmed by
the city or town authorities."   Such confirmation was made
in this case, and the objection accordingly cannot be sus-
tained.

6.    Counsel for plaintiff further seem to think that the
cost of the grading work should be borne by the city as a
whole, and should not be assessed against property benefited.
They rely on Section 1982 of our statute, which provides:

"ESTABLISHING GRADES.   In case the notice pro-
vided for in Section 1971 be to establish a grade or alter
the same, the council may, at any date within six months
after the expiration of giving the notice as provided in
Section 1973, establish the same by ordinance or resolution.
The cost of establishing or altering the grade of any streets,
highway, avenue, road or alleyway shall be paid out of the
general funds of the city or town."

This section, we think, refers only to the establishment of
grades, that is to say, determining the grade lines and mak-
ing a record thereof.   We do not think that it could be con-
strued to refer to the work of grading, bringing the street to
the grade lines.   In Kepple v. Keokuk, 61 Iowa 653, 17 N.
W. 140, it was said:

"Establishing a grade does not mean the actual lowering or raising the surface of the street. It means the fixing of a base line or plane of reference, and certain measurements from that plane."

(See also Reilly v. Fort Dodge, 118 Iowa 633, 637, 92 N. W. 887; Cummins v. Dixon, 139 Mich. 269, 272, 102 N. W. 751.) We do not think that the position of counsel for plaintiff on this point is well taken.

For the reasons stated the judgment must be reversed, and finding nothing in the record that would authorize a judgment for the plaintiff, the cause will be remanded with directions to enter judgment for the defendants.

*Reversed and remanded.*

POTTER, C. J., and KIMBALL, J., concur.

## ON PETITION FOR REHEARING

BLUME, Justice.

1. Counsel for plaintiff have argued one point at greater length than heretofore and have gone into greater details in regard thereto. Their contentions, in short, as we understand them, are these: that under the zone assessment system, as contemplated in Section 1984 of our statute, the outer limit of the fifth zone necessarily is the outer limit, laterally, not only relative to any particular street, but in an absolute sense; that therefore, under the law, no more than one street, generally speaking, can be embraced in a district; that in no event can parallel streets be so included; that since these provisions, which are claimed to be jurisdictional, have been violated, the council necessarily adopted an arbitrary method of assessment, which, therefore, is not only illegal, but unconstitutional, as well. Several opinions decided by the Supreme Court of the United States are cited, that an arbitrary method of assessment will not be tolerated. Counsel call especial attention to that portion of said Section 1984 of our statute, reading as follows:

"The fifth subdivision shall include all lands, if any, within the district lying between a line drawn parallel with and 120 feet from said street margin and the *outer limit of said local improvement district as hereinbefore described.*"

Of course, there may not be any fifth, or any fourth, zone, by reason of the depth of the lots, but in order not to further obscure a subject already sufficiently obscure, we shall leave that factor out of consideration, except to say that were it not for the italicized clause referring to the fifth zone, there would be no possible ground for the contention of counsel. This italicized clause would seem to lend color to the claim of counsel, and, anxious to arrive at conclusions only that are right, we have given full and careful reconsideration to this subject. And in view of the importance of this clause, we shall not apologize for the length of this opinion on rehearing.

We have shown fully, in the original opinion herein, that several sections of our statute clearly contemplate that more than one street may be embraced in a district. We cannot ignore these provisions of the law, and must, if possible, give effect to them. We must, therefore, if we can, construe Section 1984 in harmony therewith, so that all provisions of the law on this subject may stand. Counsel have attempted to elucidate the subject. They say:

"There necessarily must be two sets of zones, and only two, paralleling the street on which the improvement is made, and which will include the entire area of the district. They need not necessarily be in straight lines; that is to say, they may change directions, and thus turn into another street, and another, so long as this one system of parallel zones is maintained."

Unfortunately, the explanation is not adequate. Make a map with streets and blocks. Suppose a street, and its parallel zones, running north and south. Then, at the northern point, turn to the west along a street running in that direction at an angle of 90 degrees. The zones cannot be kept parallel and continuous. One zone area, under the law, will overlap another at the turning point to the extent

of the distance of one half block, stretching from the turn-
ing point on the north to the south, on the westerly side.
The nearer the angle of change is to 180 degrees, the less
of the zone area will overlap. Theoretically, therefore, in
order to keep to the "one system of parallel zones," only
one street, with substantially no change of direction, could
be included in the district, and the provisions of law that
more than one street may be embraced therein would be
absolutely nugatory. If the council of a city should desire
to improve all the streets surrounding an ordinary city
block, it would be compelled, if counsels' theory is correct,
to create at least two, and probably four, separate improve-
ment districts—a conclusion to which, unless the law is
clear, we should not want to subscribe. Nor are the gen-
eral economic features persuasive of counsels' view. They
contend that under our law a man living on one street
where little grading is done should not be compelled to help
pay for making a fill on a parallel street five blocks away.
They would admit that a street, running, for instance, north
and south, for a distance of five blocks, may be included,
for improvement purposes, in one district. Little work
may be necessary to be done on the south end thereof, but
a great fill may have to be made at the north end. Still,
counsel would admit that the man living at the south end
could be assessed for part of the heavy expense made neces-
sary at the north end, even though his route of travel might
seldom lead in that direction. It might well happen, that
an improvement, made five blocks away on a parallel street,
would be of much greater benefit to him than the improve-
ment made on the north end of the street on which he lives.

If we substitute the plural "streets" for the singular
"street" in Section 1984, as we are authorized to do under
Section 1968 and other sections of the statute, and leaving
out all words and sentences not necessary for a clear under-
standing of the point under consideration, the first part of
Section 1984 would read about as follows:

"The assessment district shall include all the property
between the termini of said improvement, abutting upon

or proximate to the streets proposed to be improved to a distance back from the marginal lines thereof to the center line of blocks facing or abutting thereon. All property included within said limits shall be held to be the property specially benefited by such local improvement and shall be the property to be assessed to pay the cost and expense thereof, which cost and expense shall be assessed upon all of said property so benefited in accordance to the special benefits conferred on such property in proportion to area and distance back from the marginal line of the streets improved. Said local improvement, for the purpose of ascertaining the amount to be assessed against each separate lot, shall be divided into subdivisions or zones, paralleling the margin of the streets to be improved.''

Then follow the provisions providing five subdivisions, and including the provisions for the fifth zone or subdivision above quoted. Thus far and thus read, it would seem clear that this section in no wise bears out the contention of counsel, but sustains the contrary view thereof.

The primary purpose of this section is to fix and determine what in Section 2031 is called the ''assessment zone'' which includes five zones or subdivisions, and to fix the relative proportion of benefits to them and the amounts each of these subdivisions respectively shall pay. The clause relied upon by counsel that the outer limit of the fifth zone is the ''outer limit of said local improvement district as hereinbefore described,'' must therefore be construed in that light. The words ''as hereinbefore described'' refer to the previous provisions of Section 1984, and, as we have seen, these provisions may well be held to contemplate that various streets, including parallel streets, may be included in the district.

The section, after defining the relative position and area of the first four zones, proceeds, in the clause mentioned, to define the relative position and boundaries of the fifth zone. It is clear, therefore, that the purpose of the section is not to define the boundaries of the whole district as such, but the boundaries of zones or subdivisions, and whatever

is said in connection with the fifth zone as to outer limits is said relative to the marginal line of the street, and the inner line of the fifth zone, and, further, in order to determine what, for purposes of assessment, should be computed as part of the area of the fifth zone adjacent to a street. In other words, it would seem that the term "outer limit of said improvement district" is equivalent to the outer limit of the "assessment zone," referring to the relative position which this limit bears to the particular parallel street to which it is immediately adjacent. In a sense at least, the outer line or margin of the fifth zone must necessarily, for assessment purposes, everywhere and at every point, no matter along what street, be the outer limit of the district relative to the street immediately adjacent. Where there is an alley, this alley divides one zone area from another; if there is no alley, the two adjoining subdivisions called "fifth" are still divided by an imaginary line, they belonging, for assessment purposes, to two different zone areas. Hence we conclude that the term *"outer limit of the local improvement district"* seems to be used as a term relative to a particular street, and was intended to designate the outer limit of the zone area adjoining such street. In this way—and we know of no other—force and effect may be given to the apparently conflicting provisions of the statute. The question, in short, simply is whether the term "outer limit of the local improvement district" shall be understood in a relative sense or in an absolute sense. In view of all the provisions of the law, while the question is not, perhaps, free from doubt, we incline to the former view. We might say further, that, since several sections of the statute clearly contemplate that several streets may be embraced in one district, if one kind of streets, namely, those that are parallel, were meant to be excluded, the legislature could easily have made specific provision to that effect, which it failed to do.

2. But if we are wrong in our construction of the statute, the question in this case still remains as to whether or not plaintiff, not having filed objections in the proceedings

for confirmation of the assessment, is nevertheless entitled to raise the point now, and that depends on what effect should be given to Sections 1985 and 1988 of our statute. We have found no case directly in point. A similar case is City of Spokane v. Preston, 46 Wash. 98, 89 Pac. 406. In that case the property of defendant was located on Peterson Avenue, which was improved. It was claimed that no other street should have been included in the improvement district by reason of the fact that the petition did not authorize the inclusion of any other street, just as it is contended in this case that the law does not authorize the inclusion of parallel streets. But in that case the council created a district including streets other than Peterson Avenue, and the amount of work done on each street was no more separated in that case, as we understand it, than was done in the case at bar. The court says:—

"It is not contended by the appellants that their property is not properly assessable for the Pacific Avenue sewer. * * * The controversy, therefore, seems in effect to reach the amount of the assessment only, and if that is true, then, since the appellants were constructively before the council at the time of the hearing upon the confirmation of the roll, and since the records there disclosed the extent of the plans and also that the expense of the laterals was included, the objection should have been raised at that time. Even under appellant's theory that the city could not acquire jurisdiction except through the petition, jurisdiction was at least acquired to construct the sewer directly within Pacific Avenue, and having jurisdiction for that purpose, the city was not divested of its power to make at least some assessment upon appellant's property, and it was their duty to make objection to the amount thereof before the council."

The language so used is so apt here that we have quoted it, notwithstanding the fact that it was also said:

"We fail to find any contention that the extension of the laterals brought appellant's property within the district, when otherwise it would or might not have been included."

which, though the meaning is in doubt, seems to hint at some arbitrary way of including Pacific Avenue in the district.

In Kendig v. Knight, 60 Iowa 29, 14 N. W. 78, it was held that to construct a gutter on two streets under different resolutions, and to take into consideration the entire work on both streets in making the assessment, was an irregularity merely. And it has been held that, although under certain provisions of the local law, their several and distinct characters must be upheld in making several improvements, they may, nevertheless, be provided for in one resolution of intention. (Crummey v. Howe (Cal. App.) 192 Pac. 112; Bates v. Twist, 138 Cal. 52, 70 Pac. 1023.) In fact, counsel for defendant in error concede that the mere technical matter of including a number of parallel streets in one district would not have been jurisdictional, provided separate accounts of the cost of the improvement on each and every street had been kept, so that the proper apportionment could have been made. Then they further contend that it would have been a physical impossibility to properly apportion the assessments in this case because no such separate account was kept. Now, if the inclusion of several streets is not itself jurisdictional, then it would seem to follow that the subsequent action of the council in assessing the property is a mere matter of apportionment, going merely to the amount of the assessment, and such matters, as we showed in the original opinion, must be raised in the proceedings for confirmation of the assessment. (See also Dowling v. Conniff, 103 Cal. 75, 36 Pac. 1034.) Further, we are not persuaded that the mere matter of keeping accounts should present an insuperable obstacle to make corrections, if necessary. The city council had, under the law, ample power to take full and complete evidence on the subject, and it could, probably, in that manner have ascertained reasonably accurately the amount expended on each street, so as to enable the making of any necessary corrections which it was fully authorized to make.

But be that as it may, it would seem clear that the objection raised by counsel comes clearly within the principles already pointed out in the original opinion herein. As there shown—a principle not controverted—whatever the legislature could have dispensed with in the first place, it has power to declare waived, or the defects therein cured, unless objections are filed as provided by law. The rule is succinctly stated in Paige & Jones, Taxation by Ass., Section 1337:

"The legislature has, accordingly, a wide discretion in restricting defenses to assessments, or in restricting the right of property owners to apply to the courts for redress against assessments. It may deny to the property owner the right to interpose defenses or to seek redress as to all matters with which the legislature could have dispensed in advance."

In such cases the legislature simply passes upon the rules of procedure, which it had a right to adopt in the first instance, and has, of course, also the right to declare waived, if no objections are filed. (Elliott, Roads & Streets, (3rd Ed.) Sec. 738. See also Brown v. City of Silverton (Or.) 190 Pac. 971; In Re Delinquent etc. Taxes (Minn.) 180 N. W. 240.)

We think we have also heretofore clearly shown, and the principle is not disputed, that the legislature could have specifically provided for the inclusion of parallel streets, where the circumstances of the case would make such inclusion reasonable; and there is nothing in this case to show that it would not have been here. (See also Elliott, Roads & Streets, (3rd Ed.) Sec. 684.) Improvements are often made by improving a certain definite district, or area that is compact, and the enhancement in value of the property affected often arises by reason of the fact that this is done. We might further say here that it seems that the property of the plaintiff was benefited to some extent; to what extent does not appear. It does not appear that the benefit is not equivalent to the assessment (not considering that some of the persons assessed might have an action for

the damage for a change of grade.). The only possible doubt that could arise from the record is whether the lands west of CY Avenue should have been included in the same district with the lands east thereof. But the record does not disclose that the acts of the council in that regard were arbitrary or constituted an abuse of discretion, or were not wise and beneficial throughout. All acts done by the council appear to have been done in good faith, and not arbitrarily. Hence, no constitutional question could be here involved. The question is simply, What did the legislature provide? Under Section 1985 the objection made could have been raised in the proceedings for confirmation of the assessment, at which time the council, or, on appeal, the courts, could have set the latter aside. The objection not having been so raised, the statute declares it waived, and further, by Section 1988, makes the confirmation of the assessment final and conclusive against all parties not filing objections as required, in all proceedings of every nature except (1) where the property does not appear on the assessment roll, or (2) if the assessment has been paid. Despite the fact that this case does not fall within the exceptions last mentioned, the claim of counsel, is to the effect that we should ignore the statute and make a further exception not authorized thereby. The effect of these sections of the statute is, plainly, that where no such objections are made, the law shall be deemed to have authorized the method adopted by the council here; that in such event the inclusion of parallel streets and the method actually adopted is, in the opinion of the legislature, thus acquiesced in by the property owners, as just and as fair as if the original method had been followed. As said in the case of Rucker Bros. v. Everett, 66 Wash. 366, 119 Pac. 807, 38 L. R. A. (N. S.) 582:

''These provisions leave the property owner in no worse situation that if they had left the power of assessment un limited in the first instance; hence while they give this right to the property owner, they also provide a method by which it may be lost for want of objection on his part.''

The fundamental difference apparently existing between counsel for plaintiff and the court appears to be that counsel are not willing to attribute to the sections of the statute last mentioned the force and effect which these sections themselves specifically state they have. And hence, too, the authorities upon which counsel rely are not applicable. The exact point here under consideration has never been decided, but a statute identical, or similar to, Section 1988 of our statute has been under consideration several times by the Supreme Court of Washington. (N. & P. Hypothck Bank v. Spokane, 18 Wash. 456, 51 Pac. 1070; Real Estate Inv. Co. v. Spokane, 59 Wash. 416, 109 Pac. 1057; Van Der Creek v. Spokane, 78 Wash. 94, 138 Pac. 560; Rucker Bros. v. Everett, supra; In Re Improvement Sewer Dist. No. 1, 84 Wash. 565; 147 Pac. 109; Shaser v. Olympia, 92 Wash. 466, 159 Pac. 756; In Re Grandview Local Imp. Ass., 203 Pac. 988.) In the second and third of the above cases it was said that the purpose of the statute was to save assessments on collateral attack, except in case of fraud. In the case of N. & P. Hypothek Bank v. Spokane, supra, the assessment was made according to valuation, instead of according to benefits, but were upheld on collateral attack. In the Rucker Bros. case, an assessment greater than 50% of the assessed value was upheld on collateral attack, although the statute expressly prohibited it. In both of these cases, it would seem that the action of the council could be said to have been as arbitrary, if that term is applicable, as the action of the council here, if no parallel streets should have been included in the district. We might almost paraphrase here the language used in the learned discussion in the latter of these cases. A question similar to the one here came up in the case of In Re Grandview Local Imp. Assn., supra, except that in that case the objections were raised in the proceedings for confirmation of the assessment. The court, however, takes occasion to discuss the point as to when objections should be made, in view of a section of the statute identical to our Section 1988, and in language plainly disposing of the contention here, says:

"Formerly a property owner without appearing before the city council could within a reasonable time contest the validity of special assessments for local improvements by an independent action in court. * * * Since the Act of 1911, however, assuming power in the city to make the improvement, and in the absence of fraud, such independent action cannot be maintained except for the causes mentioned in Section 23, which are non-existent here. * * * Evidently the purpose of the law was to change the remedy, and provide for appearance in the proceedings before the legislative body of the city. It is the property owner's day in court, so to speak, and the penalty upon his failure to so appear is that he waives objections or the right to an independent suit in equity."

The force of the reasoning in the foregoing cases as to the meaning of Section 1988 of our statute is applicable to and disposes as well of the other points argued in the petition for rehearing, such that the statute requires the grade to be established by ordinance. (See Elmendorff v. City of Antonio, (Tex. Civ. App.) 223 S. W. 631.) Hence we need not determine that point, although we might mention that we have not overlooked the reading of Section 1970 of our statute. The fact that the assessment was not made immediately after the contract for the improvement was entered into is at most an irregularity. In the Matter of Deering, 14 Daily 89. That fact, so far as we can see, would in no event be prejudicial to the rights of the parties assessed, and seems rather to have been enacted for the benefit of the contractor, so that, if no objections are filed to the confirmation of the assessment, he may feel secure in his rights.

Counsel have re-argued at length the question of the defect in the resolution of intention, without, however, discussing the curative provisions of Section 1988 of our statute. They have drawn our attention to the differences in our law and that of Indiana and Alabama, and try to distinguish the cases we originally cited from those states. Some of these points of difference we shall mention later. In the states mentioned the preliminary proceedings are

held to be advisory only in character. Counsel contend that in our state they are not so, but are, according to Section 1973, jurisdictional in character. We tried to show in the original opinion that, in view of Sections 1985 and 1988 of our statute, they are advisory in character, and unless objections are filed in accordance with the provisions of the former section, defects therein are waived. Many features of the law indicate that to be true. No plans and specifications are prepared in the first place. Before these are made, all the proceedings with reference to the resolution of intention have taken place. During this time the council may learn that from the standpoint of feasibility or cost the improvement should not be made. Even if no objections are made, still the council is not compelled to go ahead, except, perhaps, where the owners of fifty percent petition for the work. The very reason for these proceedings is to determine the advisability of making the improvement; to get the tax payers to express their opinion and to guide the council in their deliberations. If the owners of two-thirds of the property veto the improvement, the council is, for a limited time, prevented from going ahead, but even such opportunity for a veto constitutes a part of the scheme to fully advise and guide the council. In any event, when Section 1988 of the statute provides that the validity, regularity and correctness of the assessment cannot be questioned, when no objections are filed as provided by law, it in effect provides that the preliminary proceedings shall be considered as only advisory, in a collateral attack. That section is, in fact, so broad and sweeping in its provisions, that it is clear that defects in all jurisdictional steps which depend on the statute merely, and involve no constitutional rights, are, in the absence of objections filed as provided by law, when and after opportunity for the filing of such objections has been given and has existed, declared irregularities merely, and must be so held at least where there has been an attempt, in good faith, to follow the provisions of the law. We cannot see how any other meaning can be derived from the clear, unequivocal

language of the section. The only question, therefore, remaining, is whether or not some constitutional guaranties have been violated. We touched upon that proposition but briefly in our original opinion.

3. No man can be deprived of his property without due process of law, according to the fourteenth amendment to the Constitution of the United States and Sec. 6, Art. 1 of the Constitution of Wyoming. While we shall not attempt to give a comprehensive definition of what constitutes such due process, its indispensable elements are an investigating tribunal, not necessarily a judicial body, with full power to hear and determine the subject matter of the controversy, notice to appear, and an opportunity to be heard respecting the matter in dispute. A law which requires notice to be given, and affords the right to be heard, with ample opportunity to present all the evidence and argument which the parties deem important before judgment, is all that can be adjudged vital under due process of law. (Pryor v. Western Pav. Co., (Ok.) 184 Pac. 88.) We cited cases in our original opinion holding that in special assessment proceedings, no notice of preliminary proceedings is necessary, but that notice such as, under Section 1985 of our statute, is required in proceedings for the confirmation of assessments, and an opportunity for hearing as is therein provided, is sufficient to meet the constitutional requirements above mentioned. These cases were decided in Alabama, Indiana and by the Supreme Court of the United States. Counsel insist that these cases are not applicable for the reason that it appears therein that the assessments in those cases were fixed by the local governing boards according to benefits, but that the method of assessment in the case at bar is governed by Section 1984 of our statute, which fixes a definite rule according to zones, and under which the amount to be assessed is purely a matter of mathematical calculation. Our attention is called to the fact that the Supreme Court of the United States has held that no notice is required to be given of an assessment made under such a rule. Myles Salt Co. v. Drainage District, 239 U. S. 478;

Hancock v. City of Muskogee, 250 U. S. 454, and other cases are cited. From this counsel apparently draw the conclusion that, since no previous notice of the *assessment* is necessary, previous notice of the preliminary proceedings, especially the resolution of intention, becomes necessary. But the cases do not so hold, and, as we construe them, no intimation to that effect can be gathered therefrom. We shall refer to the Hancock case again later; but we might mention the fact that, construing it in the light of the Oklahoma case upon which it is based, it seems to hold that where the legislature fixes a mathematical rule of apportionment, publication of the ordinance ordering the work to be done, such as is contemplated under a statute like our Section 1976, constitutes due process of law within the meaning of the fourteenth amendment to the Constitution of the United States, at least when the state court so considers it and where plenary power as to local improvements is given to the municipality, as apparently it is in this state. We need not go that far in the case at bar. Nor need we decide the exact meaning of Section 1984 of our statute, or determine whether it establishes, by prescribing zones for assessment purposes, a purely mathematical rule, except to say that when the legislature enacted that the assessment should be upon all "property so benefited in accordance to the special benefits conferred on such property in proportion to area and distance back" etc., it would seem that the assessment should not in any event exceed the benefit conferred. That limitation in fact will, if necessary, be implied. (Van Damm v. Conkling, 23 Hawaii 487, and cases cited. Goodrich v. City of Detroit, 123 Mich. 559, 82 N. W. 255.)

The distinction which counsel have sought to draw between cases where the legislature fixes a mathematical rule, and where the local board fixes the assessment according to benefits, is not borne out by the authorities. Counsel would make the time of the notice, and of the opportunity for a hearing, of the essence. But while that might be a matter of legislative expediency, we fail to see why that should be

so in order to constitute due process of law. (See Elliott on Roads & Streets, Sec. 699; Paige & Jones, Taxation by Assessment, Sections 125-132.) True, under our law a sufficient number of property owners can, by remonstrance, stop the improvement for a limited time, but the provision in reference thereto is a matter of legislative grace; no right to remonstrance need have been given, the failure to give it may be cured by the legislature, and we cannot, therefore, give that question any consideration in determining constitutional requirements. (Brown v. City of Silverton, (Or.) 190 Pac. 971; Brougham v. Kansas City, 263 Fed. 115; Londoner v. City of Denver, 52 Colo. 15, 119 Pac. 156, 159.) Besides, all rules of apportionment of assessments are or should be based upon the underlying principle that the property has been benefited to the extent of the assessment, whether the apportionment is made by a rule previously fixed by the legislature, on a purely mathematical basis, or is made by the local governing board according to the benefits conferred. Improvements in municipalities are necessary; the welfare and convenience of the population often require it, and by the consensus of opinion of all the courts, as well as of the legislatures, taxation by special assessments to the extent of the benefits conferred is justified for the interests of all. If, then, a man's property has been improved, even though against his will, by improvements made by the municipality pursuant to legislative authority, there is, considering the welfare of all, no good reason, from the standpoint of the constitution, for holding that he should not be compelled to pay the value thereof. He has no constitutional right to say as to whether the improvement shall be made. This and other questions must, in the interests of all, necessarily be largely left to the discretion of the governing board of the municipality. He is interested in the one vital question of the charge, the assessment made upon his property. In the legality of that charge is necessarily involved the legality of all that precedes it and of which it is the consequence. (Adams v. City of Roanoke, 102 Va. 53, 45 S. E. 881.)

Hence it would seem clear that no matter what rule of apportionment is used, if he is able to test the validity and the justness of the assessment at some stage of the proceedings, he is fully protected in his constitutional rights, without making the time when he shall have the opportunity to so protect himself of the essence. And this seems to be the view of the authorities. Elliott on Roads & Streets, Sec. 699, says:

"But while we regard notice as indispensable, we do not believe that it need always be given during the initiatory or original proceedings; on the contrary, our judgment is that if it is provided for at some stage of the proceedings and in such a mode as to give the party an opportunity to be heard before a final conclusion is reached, it will be sufficient."

In the case of Pryor v. Western Pav. Co., supra, the court said:

"The city authorities are given full power to correct any appraisement or apportionment, by raising or lowering the same as the facts may justify. Such proceeding meets all the requirements of due process of law."

In the case of Argyle v. Johnson, 39 Utah 500, 118 Pac. 487, 490, the court said:

"In giving legal effect to the foregoing principle in cases like the one at bar, it is not necessary that a hearing be had at any particular stage of the proceeding, by which rights may be affected, or that the hearing be had before a regularly constituted court of justice; but it is necessary that a hearing be given at some time, and that the same be had before some officer, tribunal, board or court to whom the persons whose property is affected may present his evidence, objections, and arguments, to the end that the officer, tribunal, board, or court may be enabled to fairly and intelligently pass upon and determine the question presented for decision."

We think that two cases decided by the Supreme Court of the United States completely dispose of the contention of

counsel. (Mount St. Mary's Cemetery Association v. Mullins, 248 U. S. 501, affirming 268 Mo. 691, 187 S. W. 1169, and Hancock v. City of Muskogee, 250 U. S. 454, affirming 168 Pac. 445.) By examining the opinions of the State Supreme Courts, it will be found that the assessments were made according to area—purely a mathematical rule—and in both cases the Supreme Court of the United States passed on the necessity of giving notice of preliminary proceedings, in order to determine whether there was due process of law. That they did not involve the exact point of giving notice of a resolution of intention would, of course, not distinguish the cases from that at bar. In the Hancock case the court said:

"So far, therefore, as the present ordinance determined that a district sewer should be constructed, and established the bounds of the district for the purpose of determining what property should be subjected to the special cost of constructing it, there was an authorized exercise of the legislative power of the state, which, according to repeated decisions of this court, was not wanting in due process of law because of the mere fact that there was no previous notice to the property owners or opportunity to be heard."

In the first of the two cases last cited the court said:

"It is insisted that no notice was given, or opportunity to be heard, prior to the creation of the sewer district, and, therefore, due process of law was denied. These tax bills were levied upon districts the creation of which was authorized by legislative authority. The record discloses that the owner has had full opportunity to be heard, in judicial proceedings to enforce the tax, and its contentions of arbitrary action and lack of benefits conferred have been considered and decided. This is due process. (Davidson v. New Orleans, 96 U. S. 96; Embree v. Kansas City Road District, 240 U. S. 242, 251.)" (See also In Re Delinquent, etc. Taxes, (Minn.) 180 N. W. 240.

We can see no force in the statement of counsel that "it is a legal absurdity to conclude that due process of law is

had at a hearing on which it was impossible to grant any relief.'' The sufficiency of the notice prescribed by and given herein pursuant to Section 1985 of our statute for the hearing given under said section is not and we think cannot be questioned. The acts done herein all appear to have been done in good faith. According to said Section 1985 and Section 1987 of our statute, all parties may file any objections which exist against confirmation of the assessment; the council has power to correct, revise, modify or set aside the roll; on appeal, the courts have power to confirm, correct, modify or annul the assessments as to property of the objector. Under these provisions, the party affected may protect, not alone his constitutional rights, but his statutory rights as well. Each and every objection made in this suit, and every objection that could be made, including the proposition as to whether the tax herein imposed is valid and just, could have been raised and determined before the council in the proceedings for the confirmation of the assessment herein, and any relief to which plaintiff was, under the law, entitled, could have been granted under the provisions of the sections above quoted. That the protection of statutory rights might be limited or temporary only, and that the property might be subject to re-assessment, is a matter that involves legislative policy rather than constitutional rights. See Wagner v. Baltimore, 239 U. S. 207, where assessments were upheld long after the improvements had been made by the municipality without any preliminary proceedings.

We have so far discussed the constitutional questions largely as though no notice of the preliminary proceedings had been given. But that is not the fact. Notice of the resolution of intention was duly published as required by law. That resolution, though defective in some particulars, advised the parties interested of the intention to make the improvement, of the inclusion of their property within the district, and that payment for the improvement was expected to be made by special assessments. Again, the record

herein shows that the ordinance ordering the improve-
ments contemplated by Section 1976 of our statute was
duly passed and published, and the parties affected were
therein advised of the same facts as by the resolution of
intention.    These notices were in addition to those pre-
scribed by Section 1985 of our statute, and can well be
taken into consideration in determining the question at
hand.    (See City of Perry v. Davis, 18 Okl. 427.)    We
think that the proceedings for assessment herein constituted
due process of law.    To hold otherwise in the face of all
these notices given and the opportunities for protection of
rights afforded would, we think, stretch to the limit the due
process clause of our own constitution and that of the United
States.    If our reasoning, however, is fallacious, then, for-
tunately, relief may be had on the constitutional questions
herein involved in the Supreme Court of the United States
on appeal.

We are not unmindful of the fact that proceedings for
local assessments are of vital importance to the tax payers
affected.    We realize that inequality of burden is easily
possible, and that even in the absence thereof, a great hard-
ship is often imposed on property holders who can illy
afford to contribute toward the making of an improvement
which, to others, may appear a necessity.    That may be,
though it does not appear in the record, the situation of
some of the parties assessed in the proceedings herein, and
the learned counsel for plaintiff, not only zealous in their
duty as such, but, affected perhaps also by such condition
of hardship known to them, have been insistent in urging
upon us the correctness of their points of view.    We un-
derstand and fully appreciate the situation often arising
as above mentioned.    We, moved by sympathetic feelings
no less than counsel, would only be too glad to meet and
remedy such conditions whenever arising, if we legally
could do so.    But the court has to perform the function
assigned to it by the constitution and laws of this state;
and in this case the remedy, if necessary, which is sought

by the learned counsel, must be sought at the hands of the legislative branch of the government, whose prerogatives, exercised in accordance with the constitution, we have no right to usurp.

*Rehearing denied.*

KIMBALL, J., concurs.

POTTER, C. J., being ill, did not participate in the final consultation herein.